## FLAGG v. UNITED STATES.

### (Circuit Court of Appeals, Second Circuit. May 9, 1916.)

### No. 196.

CRIMINAL LAW ⬗395—EVIDENCE—VALIDITY OF SEARCH—CONSTITUTIONAL PROVISION.

Const. U. S. Amend. 4, declares that the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, while Amendment 5 declares that no person shall be compelled in any criminal case to be a witness against himself, or be deprived of life, liberty, or property without due process of law. Accused was taken by the municipal police to the post office building, where he was arrested under a warrant charging a violation of Criminal Code (Act March 4, 1909, c. 321) § 215, 35 Stat. 1130 (Comp. St. 1913, § 10385), in that he had devised a scheme to defraud and used the mails in furtherance thereof. At the same time all the books and papers at his place of business were seized and taken to the post office building, where during a course of years they were examined by federal authorities, notwithstanding accused made appropriate demands for return. Subsequently the papers were returned, but in a prosecution for using the mails to defraud secondary evidence gleaned from such documents was offered. *Held* that, as the seizure was illegal, being without warrant, such evidence was incompetent against accused, and a conviction based thereon must be reversed.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 877; Dec. Dig. ⬗395.]

In Error to the District Court of the United States for the Southern District of New York.

Jared Flagg was convicted of devising a scheme to defraud and using the mails in furtherance thereof, contrary to Criminal Code, § 215, and he brings error. Reversed and remanded.

This writ of error seeks to review a judgment of conviction upon six counts of the indictment charging the defendant with having violated section 215 of the Criminal Code, in that he devised a scheme to defraud and used the mails in furtherance thereof.

Martin W. Littleton and Owen N. Brown, both of New York City, for plaintiff in error.

H. Snowden Marshall, U. S. Atty., Claude A. Thompson, Sp. Asst. U. S. Atty., and Ben A. Matthews, Asst. U. S. Atty., all of New York City, for the United States.

Before COXE and WARD, Circuit Judges, and VEEDER, District Judge.

COXE, Circuit Judge. The defendant insists that he was convicted by methods prohibited by the fundamental law of the land. The Fourth Amendment to the federal Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."

The Fifth Amendment provides, inter alia, that no person—

"shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law."

These amendments were intended to safeguard the rights of the people of the United States against the encroachments of unlawful and arbitrary power and to preserve the rights of the humblest as well as the most powerful citizen. They were passed to perpetuate in our law the English doctrine proclaimed by Sir Edward Coke and eloquently reasserted by Chatham in his memorable address on the Excise Bill, as follows:

"The poorest man may in his cottage bid defiance to all the forces of the crown; it may be frail, its roof may shake, the wind may blow through it; the storm may enter, the rain may enter; but the king of England cannot enter; all his forces dare not cross the threshold of the ruined tenement."

What becomes of this defendant, important as it is, sinks into insignificance when compared with the right of the people of the United States to be protected from unlawful search.

On September 23, 1911, the defendant was arrested at his place of business and all his books and papers, including securities and cash, were seized by the parties making the arrest and were carted away to the post office building, in which is the office of the United States attorney. The courtrooms of the United States are also located therein. It is contended by the counsel for the United States that the seizure was made by members of the local police force. His version of what occurred when the books and papers were seized does not differ materially from the defendant's version. He contends that the municipal police made the arrest of the defendant and the seizure of the books and papers but he does not pretend that they had any process which warranted the seizure. He admits that the defendant was taken by the municipal police to the United States post office building, where he was arrested under a warrant issued by a United States commissioner upon the verified complaint of Post Office Inspector Kincaid, charging a violation of section 215 of the United States Criminal Code. The brief on behalf of the United States dismisses the unlawful arrest by the police with the following statement:

"Under what process or authority the arrest and seizure were made by the municipal police officers does not appear in the record. Nor does the record show whether at that time Flagg was charged with having violated any state law or municipal ordinance. When the marshal made the arrest under the federal warrant, he seized only the person of the defendant, and he never seized and never had possession of any of the defendant's books and records. On the trial the government conceded that the United States marshal had no process authorizing him to seize anything other than the person of the defendant."

In other words, when the defendant was arrested at his place of business on Fortieth street and his books and papers were seized, there was no warrant or process of any kind either of arrest or of search issued against him. The defendant insists that his books and papers were taken possession of by the postal authorities of the United States

under direction of the Department of Justice without process or legal authority of any kind. This matter might have been made perfectly clear but it has been left largely to inference and conjecture. Who the police officers were, where they got their orders, who the United States official was who apparently was directing the so-called "raid" does not satisfactorily appear, but it does appear that the papers and books were all carted to the federal building where they remained for several years and where the government officials worked over them for 18 months, although the defendant applied for their return September 26th, 3 days after they were seized. Some conclusions may be left to presumption, and it is impossible to believe, in the face of these facts, that the United States, acting through its accredited agents, was not responsible for the arrest of the defendant and the seizure of his property. To attribute such an elaborate and carefully prepared proceeding as was planned to convict the defendant, to a few local patrolmen or to some unknown parties, in the face of the fact that the property was immediately carted to the federal courthouse and remained there till the federal officials had obtained all the information desired, makes too severe a demand upon the imagination.

The fact that the government officials returned the books after they had worked over them for a year and a half and had obtained all the information possible, is not of the least importance in considering the question of the initial illegality. We have, then:

First, a seizure of the defendant's books and papers without warrant or legal process of any kind—an unlawful entry and an unlawful taking.

Second, a presumption, well nigh conclusive, that the United States, whose agents took the books and papers into custody, and who alone was interested in prosecuting the defendant, was the party who made or instigated the unlawful seizure through its agents and servants.

The question then is reduced to this—can a party be convicted of a crime upon proof procured from books and papers which have been taken from him by force and without a pretense of legal authority?

Will the people be secure in their persons, papers and effects if seizures and searches made without pretense of legality are sustained by the courts?

The case of Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, goes further in protecting the rights of the citizen than is required in the case at bar for it holds that a compulsory production of private papers under an act which provides that, if not produced, the prosecutor's version of their contents shall be taken as true, is as much within the prohibition of the Fourth Amendment as is a forcible entry and seizure of the books and papers. In other words Judge Bradley construes the amendment to mean what it says and holds it to be a constitutional barrier in the path of him who seeks to seize another's property without due process of law. He says:

"The search for and seizure of stolen or forfeited goods, or goods liable to duties and concealed to avoid the payment thereof, are totally different things from a search for and seizure of a man's private books and papers for the purpose of obtaining information therein contained, or of using them as evidence against him."

Again he says:

"The principles laid down in this opinion (Lord Camden's) affect the very essence of constitutional liberty and security. They reach farther than the concrete form of the case then before the court, with its adventitious circumstances; they apply to all invasions on the part of the government and its employés of the sanctity of a man's home and the privacies of life. It is not the breaking of his doors, * * * that constitutes the essence of the offense; but it is the invasion of his indefeasible right of personal security, personal liberty and private property, where that right has never been forfeited by his conviction of some public offense—it is the invasion of this sacred right which underlies and constitutes the essence of Lord Camden's judgment. Breaking into a house and opening boxes and drawers are circumstances of aggravation; but any forcible and compulsory extortion of a man's own testimony or of his private papers to be used as evidence to convict him of crime or to forfeit his goods, is within the condemnation of that judgment. In this regard the Fourth and Fifth Amendments run almost into each other."

It is unnecessary to quote further from Judge Bradley's opinion. No one can read it without being impressed by its learning and the force of its logic. It is a powerful argument for sustaining broadly the protection provided by the Constitution against unreasonable seizures and searches.

The case of Adams v. New York, 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575, differs from the case at bar in many important particulars but chiefly in the essential feature that in that case a valid search warrant was issued and incidentally the letters were seized in executing it. Had there been such a warrant issued on proper proof by competent authority in the case at bar the defendant's contention that the seizure of his property was unlawful, wanton and in violation of his constitutional rights might have been unavailing. Such a warrant issued by a court of magistrate having jurisdiction protects the officer executing it even though he may transcend his authority; but did the court intend to hold that a naked trespasser may seize the entire business including the books and papers of another and use them to convict him of a crime? We think not. To hold such a proposition is to give judicial sanction to a wholly illegal proceeding and make the necessity for a search warrant unnecessary. If parties without authority may enter another's place of business and carry away all his books and papers and use them in criminal proceedings against him, the constitutional amendments and the laws passed to prevent such invasions of his rights become dead letters. There are numerous cases which hold that where an officer executing a legal search warrant seizes property, not mentioned in the warrant, which may properly be considered in evidence, the right to introduce it is not lost by reason of its unlawful seizure, but we know of no case where a conviction has been sustained upon evidence obtained by such methods as were here employed. The Adams Case proceeds upon the theory that having a legal right to search for property relating to the offense charged, such property will not be excluded from evidence because it is not specifically mentioned in the search warrant. Nowhere in the opinion is there any sanction for the proposition that one man may enter another's home, seize all his books and papers without process and procure his indictment and conviction upon the proof so obtained. In

every case, so far as we are able to discover, where the court has permitted evidence taken from the defendant to be used against him it was obtained by legal methods—a search warrant issued by the court or judge.

In Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, the opinion was written by Mr. Justice Day, who wrote in the Adams Case. The facts are in many respects similar to those in the case at bar. The defendant was arrested by a police officer, so far as the record shows without warrant. The opinion (232 U. S., at page 386, 34 Sup. Ct. 342 [58 L. Ed. 652, L. R. A. 1915B, 834]) states as follows:

"Other police officers had gone to the house of the defendant and being told by a neighbor where the key was kept, found it and entered the house. They searched the defendant's room and took possession of various papers and articles found there, which were afterwards turned over to the United States marshal. Later in the same day police officers returned with the marshal, who thought he might find additional evidence, and, being admitted by some one in the house, probably a boarder, in response to a rap, the marshal searched the defendant's room and carried away certain letters and envelopes found in the drawer of a chiffonier. Neither the marshal nor the police officers had a search warrant."

The defendant filed in the cause before the time for trial a petition for the return of the private papers, books and other property so seized. The opinion inter alia states as follows:

"The case in the aspect in which we are dealing with it involves the right of the court in a criminal prosecution to retain for the purposes of evidence the letters and correspondence of the accused, seized in his house in his absence and without his authority, by a United States marshal holding no warrant for his arrest and none for the search of his premises. * * * If letters and private documents can thus be seized and held and used in evidence against a citizen accused of an offense, the protection of the Fourth Amendment declaring his right to be secure against such searches and seizures is of no value, and, so far as those thus placed are concerned, might as well be stricken from the Constitution. The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land. The United States marshal could only have invaded the house of the accused when armed with a warrant issued as required by the Constitution, upon sworn information and describing with reasonable particularity the thing for which the search was to be made. Instead, he acted without sanction of law, doubtless prompted by the desire to bring further proof to the aid of the government, and under color of his office undertook to make a seizure of private papers in direct violation of the constitutional prohibition against such action. * * * We therefore reach the conclusion that the letters in question were taken from the house of the accused by an official of the United States acting under color of his office in direct violation of the constitutional rights of the defendant; that having made a seasonable application for their return, which was heard and passed upon by the court, there was involved in the order refusing the application a denial of the constitutional rights of the accused, and that the court should have restored these letters to the accused. In holding them and permitting their use upon the trial, we think prejudicial error was committed. As to the papers and property seized by the policemen, it does not appear that they acted under any claim of federal authority such as would make the amendment applicable to such unauthorized seizures. The record shows that what they did by way of arrest and search and seizure was done before the finding of the indictment in the federal court, under what supposed right or authority does not appear.

What remedies the defendant may have against them we need not inquire, as the Fourth Amendment is not directed to individual misconduct of such officials. Its limitations reach the federal government and its agencies. Boyd Case, 116 U. S. [616, 6 Sup., Ct. 524, 29 L. Ed. 746] supra, and see Twining v. New Jersey, 211 U. S. 78 [29 Sup. Ct. 14, 53 L. Ed. 97]."

The return of the defendant's books and papers, after all the information contained therein had been obtained by the prosecuting officers, did not cure the original trespass. The wrong had then been done. The information illegally obtained was in the possession of the United States attorney whose agents had been working over the papers "for three long years." Their return at that time was an idle ceremony. The government officials possessed the "secondary evidence" and were not concerned about the disposition of the "primary evidence."

We do not deem it necessary to discuss all the questions mooted on the briefs relating to the admission and exclusion of evidence at the trial. We prefer to rest our decision upon the broad ground that the constitutional rights of the defendant were violated by the unlawful seizure of his books and papers by the officers and agents of the United States acting without warrant or pretense of legal authority.

The judgment is reversed.

VEEDER, District Judge. I concur in the result, not in the exercise of my own judgment, but in submission to the authority of the Supreme Court. If the course of authority were clear, it would suffice to follow it without hesitation. But it is not clear, and it leads to dangers which should be explicitly recognized. That there was in this case a willful violation of the fundamental personal right secured by the Fourth Amendment admits of no question. The normal way to treat such offenses would seem to be to punish the offender directly. Prior to the decision in Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, the judicial rules of evidence had never been used as an indirect process of punishment. According to the uniform course of authority a criminal court would not permit a collateral issue to be raised with respect to the source of competent evidence. Wigmore on Evidence, §§ 2183, 2263. In the Boyd Case an order for the production of documents involving self-incriminating matter, on pain of having the allegations taken as confessed, was very properly held to be within the privilege secured by the Fifth Amendment. But the majority of the court declared the privilege applicable also to documents obtained by officers' search or seizure, legal or illegal, irrespective of testimonial process, thus enforcing the Fourth Amendment by means of the Fifth. When, however, the subject again came before the court this view was substantially modified. In Adams v. New York, 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575, the issue "arose upon objection to the introduction of testimony clearly competent as tending to establish the guilt of the accused," but which had been seized in the execution of a search warrant for lottery slips. "In such cases," the court said, "the weight of authority as well as reason limits the inquiry to the competency of the proffered testimony, and the courts do not stop to inquire as to the means by which the evidence was ob-

tained." While the court disclaimed any wish to detract from the authority of the Boyd Case, it held that there had been no error. "The security intended to be guaranteed by the Fourth Amendment against wrongful search and seizures is designed to prevent violations of private security in person and property and unlawful invasion of the sanctity of the home of the citizen by officers of the law, acting under legislative or judicial sanction, and to give remedy against such usurpations when attempted. But the English and nearly all of the American cases have declined to extend this doctrine to the extent of excluding testimony which has been obtained by such means, if it is otherwise competent." Accordingly, "subsequent cases," as the court said in Hale v. Henkel, 201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652, "treat the Fourth and Fifth Amendments as quite distinct, having different histories, and performing separate functions." Yet in Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, the court unanimously held it to be reversible error to admit in evidence documents which had been obtained by a marshal without search warrant. The opinion, which is written by the Justice who wrote in the Adams Case, distinguishes the two cases on the ground that the decision in the Adams Case "rests upon incidental seizure made in the execution of a legal warrant and in the application of the doctrine that a collateral issue will not be raised to ascertain the source from which testimony, competent in a criminal case, comes." Still, the seizure involved was without lawful warrant; and it is not explained how a defendant can turn a collateral fact into a material fact merely by making a formal motion before trial. And inasmuch as the court had expressly stated in the Adams Case that the Fourth Amendment was intended "to give remedy against such usurpations when attempted," but not to "exclude testimony which has been obtained by such means, if it is otherwise competent," it is not clear how the two cases can be reconciled in principle. Nevertheless, the Weeks Case, as the latest expression of the Supreme Court, requires a reversal of this conviction. Certain incidental differences exist, but they do not affect the principle involved. In the result, however, the defendant is released, not because he is innocent, but because a postal inspector secured without instead of with a warrant the proofs of his guilt. The sins of the postal inspector, for which the person aggrieved has not chosen to seek redress or punishment, are visited upon the only party whose claim to consideration is unimpeachable, namely, the United States. Moreover, this procedure places the administration of the criminal law entirely at the mercy of subordinate agents of the government. Whether actuated by zeal, caprice or corruption, they have it in their power to confer by their illegal act immunity from successful prosecution.