## KANELLOS v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. July 20, 1922.)

### No. 1947.

Criminal law ⬦⟶394—Searches and seizures ⬦⟶7—Evidence obtained by illegal search by state officer competent.

In prosecution for having possession of and transporting intoxicating liquor, evidence obtained by a state constable by a search made without a search warrant against defendant's protest was competent, notwithstanding Const. Amend. 4, prohibiting unreasonable searches and seizures, and Amendment 18, § 2, giving to Congress and to the several states concurrent power to enforce prohibition amendment by appropriate legislation.

Waddill, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Louis Kanellos was convicted of having in his possession and transporting intoxicating liquor, and he brings error. Affirmed.

<hr>

⬦⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

C. N. Sapp, of Columbia, S. C., for plaintiff in error.

G. L. B. Rivers, Asst. U. S. Atty., of Charleston, S. C. (Francis H. Weston, U. S. Atty., of Columbia, S. C., on the brief), for the United States.

Before KNAPP, WOODS, and WADDILL, Circuit Judges.

WOODS, Circuit Judge. Defendant, Louis Kanellos, was convicted of having in his possession and transporting intoxicating liquor. The conviction rested entirely on the evidence of a state constable, who testified that without a search warrant and against defendant's protest he searched the pockets of defendant's automobile and found two quarts of whisky. No federal officer participated in the search. There is not a particle of evidence that the search and seizure was under arrangement with a federal officer or in the enforcement of a federal law. The state of South Carolina has its own liquor laws, enforceable, of course, by its own officers. Elrod v. Moss (C. C. A.) 278 Fed. 123. A motion was made to strike out this testimony on the ground that defendant was protected from such search and seizure by the Constitution of the United States, and that evidence obtained by means of it was incompetent. The court was asked to direct a verdict of acquittal on the same ground. We think the District Judge was right in refusing both motions.

It is true we held such evidence incompetent in Dukes v. United States (C. C. A.) 275 Fed. 142, but on the point now to be decided that case cannot be followed. The general rule is that vicious origin goes to the credibility, not to the competency, of evidence. Adams v. New York, 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575. See extended note 13 Am. St. Rep. 135; L. R. A. 1915B, 834. But the Supreme Court has held, as an exception to this rule, that evidence acquired in an illegal search made by a federal officer is not competent in a federal court. Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654. The intricate distinctions and difficulties which arise in the application of this exception are illustrated in cases now before us. Even if the point were open, we should not be inclined to extend the exception beyond the express requirement of that case. The Supreme Court has held it is not to be extended to evidence obtained in an illegal search by a state officer.

If a post office is robbed, and a United States marshal, without warrant, enters the home of the thief and finds the stolen registered mail and the burglar's tools used to enter the post office, it may be that under the rule announced in the Amos Case the marshal could not testify to the discovery. But the Supreme Court has held that such a discovery made in an illegal search by a sheriff or a policeman or a private individual is competent evidence.

The point was directly involved and decided in Weeks v. United States, 232 U. S. 383, 398, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, denying the right of the defendant to have returned papers seized by state officers in a search made without a search warrant, turned over to the United States marshal

and held by the district attorney to be used as evidence against the defendant. The court said:

"As to the papers and property seized by the policeman, it does not appear that they acted under any claim of federal authority such as would make the amendment applicable to such unauthorized seizures. The record shows that what they did by way of arrest and search and seizure was done before the finding of the indictment of the federal court, under what supposed right or authority does not appear. What remedies the defendant may have against them we need not inquire, as the Fourth Amendment is not directed to individual misconduct of such officials. Its limitations reach the Federal Government and its agencies. Boyd Case, 116 U. S. 616. And see Twining v. New Jersey, 211 U. S. 78."

It is to be noted that the Weeks Case arose in the state of Missouri, and the Constitution of that state contains substantially the same provisions as to unreasonable searches and seizures as the Fourth Amendment to the Constitution of the United States.

Again, in Silverthorne Lumber Co. v. United States, 251 U. S. 385, 392, 40 Sup. Ct. 182, 183 (64 L. Ed. 319), the court, speaking of papers obtained by government officers in violation of the Fourth Amendment, says:

"If knowledge of them is gained from an independent source, they may be proved like any others; but the knowledge gained by the government's own wrong cannot be used by it in the way proposed."

In Burdeau v. McDowell, 256 U. S. 465, 41 Sup. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159, it was again held that the security afforded by the Fourth Amendment applies solely to action taken under federal authority or by federal officers; and where papers are unlawfully taken by individuals unconnected with the federal government, and afterwards come into the possession of federal officers, they may be used as evidence against the person from whom they were taken.

These cases related to seizure of incriminating private papers, not intoxicating liquors. But we are unable to distinguish this case on that ground. The significance of the second section of the Eighteenth Amendment has not yet been accurately determined. Doubtless it does confer upon the several states power to enact legislation appropriate to the purpose of enforcement of the amendment. National Prohibition Cases, 253 U. S. 353, 391, 40 Sup. Ct. 486, 588, 64 L. Ed. 946; Vigliotti v. Pennsylvania (April 10, 1922) 258 U. S. ——, 42 Sup. Ct. 330, 66 L. Ed. ——. But it does not make prohibition officers of the several states, by reason of their state commissions, officers of the United States exercising federal authority. Surely it cannot be held to overthrow the long line of cases like Twining v. New Jersey, 211 U. S. 78, 29 Sup. Ct. 14, 53 L. Ed. 97, holding that the Fourth Amendment does not protect the citizens against unreasonable searches by the state government and its agencies.

In United States v. Falloco (D. C.) 277 Fed. 75, it was held that evidence obtained by a state officer by an unlawful search was incompetent in a federal court, if a federal officer co-operated with the state officer in the unlawful search. This doctrine has no application here, because there was an entire absence of evidence of participation or co-operation by a federal officer.

The conclusion that the evidence was competent is sustained in Youngblood v. United States (C. C. A.) 266 Fed. 795; United States v. Burnside (D. C.) 273 Fed. 603.

Affirmed.

WADDILL, Circuit Judge (dissenting). The opening sentence of the majority opinion gives a brief statement of the case, namely, that a state constable, without search warrant, arrested the plaintiff in error for having in his possession and transporting two quarts of intoxicating liquors found in the pocket of defendant's automobile, and that the conviction rested solely on testimony of this witness.

A slightly more detailed account of the occurrence, and showing the result thereof, should perhaps be given, in view of the serious-ness of the case and its far-reaching importance. This constable, ac-cording to his own statement, without search warrant or other process, accosted the plaintiff in error while sitting in his automobile on a pub-lic street of the city of Columbia, searched the car over defendant's protest, and, finding in the pocket of the front door of the car two quarts of white Scotch whisky, arrested defendant, plaintiff in error, handcuffed him, and took him to the Richland county jail, directing the car to be taken to the jail, which was done, and upon further search, and no other liquor found, the car was then turned over to the federal prohibition agent, and by him held pending the result of the trial.

This occurred on the 16th of September, 1921, and on the 1st day of November, being the first day of the November term of the United States District Court at Columbia, the indictment was returned by the federal grand jury against the plaintiff in error, charging him with violating the National Prohibition Act (41 Stat. 305), for having in his possession and transporting the intoxicating liquors in question, and averring that he had previously been convicted of violating the said act. On the 9th of November the defendant pleaded not guilty, and upon trial a verdict of guilty was rendered against him by the jury which the court approved, sentencing him to imprisonment in the county jail for 90 days and to pay a fine of $1,000 and the costs of the prosecution. The testimony of the constable was admitted in evidence over the objection of the defendant, and it is as to the propriety of this ruling and the entry of judgment aforesaid that this writ of error is based.

The majority opinion proceeds upon the theory that inasmuch as the search and seizure in this case, and the arrest, imprisonment, and conviction, were all upon the testimony of the state officer, that the inhibitions of the Fourth and Fifth Amendments to the Constitution of the United States against unlawful searches and seizures, and com-pelling one to testify against himself, have no application, and hence cannot be relied upon as a defense by the defendant, it matters not how outrageous the officer's actions may have been, nor how serious its consequences to the defendant were. In support of their position, among other cases, the majority cite Twining v. New Jersey, 211 U. S. 78, 29 Sup. Ct. 14, 53 L. Ed. 97, Weeks v. United States, 232 U. S.

383, 398, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, Silverthorne v. United States, 251 U. S. 385, 392, 40 Sup. Ct. 182, 64 L. Ed. 319, and Burdeau v. McDowell, 256 U. S. 465, 41 Sup. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159.

The court quotes from and relies especially upon the Weeks Case, supra. In that case, after according to the defendant the relief desired because the testimony showed that the search was by a federal officer without search warrant, the court did announce that inasmuch as it did not appear that the police officers acted in what they did under any claim of federal authority, such as would make the amendments to the federal Constitution against unlawful search and seizure apply, that it was unnecessary to determine what rights the defendant might have as against their action.

Conceding, however, the correctness of the general proposition that the immunities granted by the Fourth and Fifth Amendments to the Constitution under consideration reach only the federal government and its agencies, still it would by no means apply here and give sanction to such high-handed and unlawful conduct on the part of this officer, as it would be necessary to do in order to sustain this prosecution. I venture the suggestion that upon careful consideration it will be found that neither of the cases cited, under their peculiar facts and circumstances, will warrant a conviction in this case.

In most of the cases, federal and state officers have jointly participated in making the unlawful search and seizure, and at least the government has had something upon which to rely in inaugurating and maintaining its prosecution of the alleged crime, other than what was secured by the simple and admittedly unlawful act of seizure, and nothing is so clear, from the authorities, as that the government's participation, directly or indirectly will avoid the whole proceeding. Silverthorne v. United States, 251 U. S. 385, 391, 40 Sup. Ct. 182, 64 L. Ed. 319; Flagg v. United States, 233 Fed. 481, 147 C. C. A. 367; Slusser v. United States (D. C.) 270 Fed. 818; United States v. Falloco (D. C.) 277 Fed. 75.

Here we have a prosecution under a federal statute, the "Volstead Act." The arrest and seizure were made without warrant or authority by a state officer, who, after handcuffing and jailing a citizen for a minor offense, not of a very grave class, turned the car over to a federal prohibition officer to await trial in a federal court, for violating the federal statute, and a heavy fine and imprisonment were imposed, all had upon the testimony of this lone state constable, acting without process or search warrant, in plain and open defiance of the Constitution and laws alike of the state of South Carolina and of the United States. To say that the arrest and seizure thus had were not for a federal offense, or in enforcement of a federal law, as is implied by the majority opinion, is it seems to me to ignore the plain and uncontradicted evidence in the record.

We now have the government of the United States asking this court to sanction and support this confessed Constitution breaker in his high-handed and cruel conduct, and going even to the extent of asking that the defendant be denied the rights guaranteed to him by

the federal Constitution against unlawful searches and seizures and from being required to furnish testimony against himself. Will the government be permitted, in dealing with one of its citizens, it matters not what his station may be, to take such untenable positions? Will it be allowed to associate with and disassociate itself from this Constitution-breaking officer, with such agility? Is it not too plain that the officers of the two governments were acting, and have acted, in concert with each other? Certainly, in a criminal case, against the accused, doubtful things cannot be done, and in construing great constitutional amendments, passed especially to guarantee the rights of the citizen, irrespective of the questions involved, we should not adopt a course that would insure such manifest wrong.

To give countenance to what was done here as a reason for denying to an accused the benefit of the protection of the constitutional amendments involved would, as stated by Mr. Justice Holmes (Silverthorne v. United States, 251 U. S. 385, 392, 40 Sup. Ct. 182, 183, 64 L. Ed. 319), be to reduce "the Fourth Amendment to a form of words," and as stated by Mr. Justice Day (Weeks v. United States, 232 U. S. 393, 34 Sup. Ct. 344, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177):

"The protection of the Fourth Amendment, declaring his right to be secure against such searches and seizures, is of no value, and, so far as those thus placed are concerned, might as well be stricken from the Constitution."

The Supreme Court of the United States has frequently had to define the rights of an accused under the Fourth and Fifth Amendments, and has, with unvarying consistency, strongly upheld the amendments as necessary to the citizen's personal liberty. In one of the very recent cases, Gouled v. United States, 255 U. S. 298, 312, 313, 41 Sup. Ct. 261, 65 L. Ed. 647, Mr. Justice Clarke, speaking for the court said:

"It would not be possible to add to the emphasis with which the framers of our Constitution and this court (in Boyd v. United States, 116 U. S. 616, in Weeks v. United States, 232 U. S. 383, and in Silverthorne Lumber Co. v. United States, 251 U. S. 385) have declared the importance to political liberty and to the welfare of our country of the due observance of the rights guaranteed under the Constitution by these two amendments. The effect of the decisions cited is that such rights are declared to be indispensable to the 'full enjoyment of personal security, personal liberty and private property'; that they are to be regarded as of the very essence of constitutional liberty; and that the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen—the right to trial by jury, to the writ of habeas corpus, and to due process of law. It has been repeatedly decided that these amendments should receive a liberal construction, so as to prevent a stealthy encroachment upon or 'gradual depreciation' of the rights secured by them, by imperceptible practice of courts or by well-intentioned, but mistakenly overzealous, executive officers." 255 U. S. at pages 303, 304, 41 Sup. Ct. at page 263 (65 L. Ed. 647).

The Supreme Court of the state of South Carolina has been equally careful to see that the rights of its citizens are preserved and protected to them in these respects. In Town of Blacksburg v. Bean, 104 S. C. 146, 88 S. E. 441, L. R. A. 1916E, 714, that court said:

"Some things are to be more deplored than the unlawful transportation of whisky; one is the loss of liberty. Common as the event may be, it is a

serious thing to arrest a citizen, and it is a more serious thing to search his person; and he who accomplishes it must do so in conformity to the laws of the land. There are two reasons for this—one to avoid bloodshed, and the other to preserve the liberty of the citizen. Obedience to law is the bond of society, and the officers set to enforce the law are not exempt from its mandates. In the instant case the possession of the liquor was the body of the offense; that fact was proved by a forcible and unlawful search of the defendant's person to secure the veritable key to the offense. It is fundamental that a citizen may not be arrested and have his person searched by force and without process in order to secure testimony against him. * * * It is better that the guilty shall escape, rather than another offense shall be committed in the proof of guilt."

In what has been said, the case has been considered as an ordinary violation of a federal statute, but when it is taken into account that it is actually a prosecution under the Volstead, or National Prohibition, Act, passed in pursuance of, and for the purpose of, enforcing the Eighteenth Amendment to the Constitution of the United States, can there be any doubt as to the correctness of the views stated regarding the status or relationship of the constable to the federal government? The constitutional amendment (Eighteenth) is as follows:

"Section 1. After one year from the ratification of this article, the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territories subject to the jurisdiction thereof for beverage purposes is hereby prohibited.

"Sec. 2. The Congress of the United States and the several states shall have concurrent power to enforce this article by appropriate legislation."

This amendment has received the sanction of the Supreme Court. National Prohibition Cases, 253 U. S. 350, 385, 386, 387, 40 Sup. Ct. 486, 588, 64 L. Ed. 946. That tribunal has declared what is meant by "concurrent power" in section 2 of the amendment, from which it appears that, while the federal government is in no sense bound by what the states may or may not do, the federal authority, though not exclusive, extends throughout the United States and all territories subject to its jurisdiction, and it cannot be doubted that all officers, state or national, engaged in the enforcement of these amendments, and the legislation passed in pursuance thereof, are and become so related to the federal government that those affected injuriously by what they do are entitled to the guaranties and immunities of the Constitution prescribed for their protection in such cases.

The judgment of the trial court should be reversed.