## SCHROEDER v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. May 4, 1925.)

No. 318.

1. **Searches and seizures ☞7—Federal Constitution does not protect citizens against unreasonable searches by state government and its agencies.**

Const. Amend. 4, does not protect citizens against unreasonable searches by state government and its agencies.

2. **Criminal law ☞395—Liquor obtained by state and municipal officers under invalid search warrant may be used in federal court in criminal case.**

Liquor obtained by state or municipal officers under invalid search warrant, or without warrant, may be used in federal court in criminal case.

3. **Intoxicating liquors ☞239(4)—Charge held not erroneous.**

Where evidence in prosecution for possessing and transporting intoxicating liquor was sufficient for jury, there was no error in charge that jury must be satisfied beyond reasonable doubt that defendant had liquor in his possession, and must have known that the packages contained liquor with unlawful content.

4. **Intoxicating liquors ☞173—Imposing sentence on count for possession held erroneous.**

Where only act of possession was possession necessarily involved in transportation,

which was subject of another count, offense was single, and imposing sentence on count for possessing, and also on count for transporting, was erroneous.

**5. Criminal law ⊂∞200(1)—One cannot be convicted of offense consisting of incidents of offense for which he was previously convicted.**

Where a person is tried and convicted of crime which has various incidents included in it, he cannot thereafter be tried and punished for an offense consisting of one or more of such incidents.

In Error to the District Court of the United States for the Southern District of New York.

William Schroeder was convicted of possession and transportation of intoxicating liquors, and he brings error. Conviction on count of possession set aside, and conviction of transportation affirmed.

This cause comes here on writ of error to the United States District Court for the Southern District of New York. The defendant below was tried upon an information which contained two counts.

The first count charged that the defendant, on August 27, 1924, unlawfully, willfully, and knowingly possessed a specified quantity "of intoxicating liquor, to wit, 6 bottles of gin, which then and there contained more than one-half of 1 per cent. of alcohol by volume, and which then and there was fit for use for beverage purposes." The second count charged the defendant with transporting the same intoxicating liquor at the time and place stated in the first count.

The defendant was charged with having committed the offenses named against the peace of the United States and their dignity, and contrary to the form of the statute in such case made and provided, being title 2 Act of October 28, 1919, known as the National Prohibition Act, otherwise known as the Volstead Act (Comp. St. Ann. Supp. 1923, § 10138½ et seq.). He was convicted on both counts. He was sentenced to pay a fine of $500 on each count, making a total fine of $1,000.

Griffiths & Content, of New York City (Charles H. Griffiths and Clarence V. Opper, both of New York City, of counsel), for plaintiff in error.

William Hayward, and Emory R. Buckner, U. S. Dist. Attys., both of New York City (John M. Cashin, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before ROGERS, MANTON, and HAND, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). It appears that, before the jury was impaneled or sworn, his counsel moved, upon an agreed statement of facts, that the information be dismissed. In making this motion, counsel relied on the claim that the evidence relied on by the government was obtained in violation of the constitutional rights of the defendant as secured to him under the Fourth and Fifth Amendments to the Constitution.

The Fourth Amendment declares that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. * * * "

And the Fifth Amendment declares that "no person * * * shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

The agreed statement of facts, upon which the motion was made, was as follows: "The particular situation presented by the evidence is, briefly, that they had no search warrant. A police officer, in searching for a violation of the liquor law, went into an automobile which bore no outward signs of containing liquor, and went into or opened a closed package, without the owner's consent, the package having no mark or suggestion on it that it contained any liquor, and opened the package, and there found a certain quantity of liquor. The question of law is as to whether or not that is a violation of the constitutional rights of the defendant, who had possession of the package at that time." The court denied the motion to dismiss.

The government's witnesses were two police officers of the city of New York and the government's examining chemist.

The first witness, a sergeant of police in the city of New York, testified that he was a confidential investigator of the police department; that on the afternoon of August 27, 1924, he saw the defendant carry a package from a building to an automobile standing in the street in front of that building. The defendant placed the package in the automobile. He then questioned the defendant, who stated that the package had been given to him by a woman. The witness took the package from the automobile, had it opened, and found that it contained six bottles of gin. He made no arrest at that time. On the following day, he took these bottles to the United States chemist in the Federal

Building, and reported the circumstances to the assistant United States attorney, whereupon an application for a warrant was made; the witness swearing to a complaint at that time. Under that warrant, the defendant was arrested. The witness accompanied the United States marshal when the warrant of arrest was served.

The second witness, a member of the police force of the city of New York, who was present and heard and saw what was said and done concerning what took place on August 27th, substantiated the testimony of the first witness.

The third witness, the government's chemist, stated that he had examined the liquor, and found that it was gin, containing a forbidden alcoholic content. The liquor was then offered in evidence, and its introduction was objected to on behalf of defendant, on the ground that it was procured in violation of defendant's constitutional rights. The objection was overruled.

The government then rested, and a motion on behalf of the defendant was made for a dismissal, on the same ground as the preliminary motion, and on the further ground that there was no evidence that the defendant knowingly possessed the contents of the package which was the substance of the information. This also was overruled, and an exception duly noted.

The defendant introduced some testimony, which did not differ in essential particulars from that introduced by the government. At the close of the entire case, the defendant again moved for a dismissal of the information, and the motion was again denied.

[1] The motion to dismiss the indictment, on the ground that the seizure of the liquor without a search warrant was contrary to law and violated the constitutional rights of the defendant, was, in our opinion, properly denied. The persons who made the seizure were not federal officers, and it does not appear that in what they did they acted upon the instigation of any federal officials. They were police officers of the city of New York.

The Fourth Amendment does not protect citizens against unreasonable searches by the state government and its agencies. The Supreme Court has settled the law upon that question. In Twining v. New Jersey, 211 U. S. 78, 92, 29 S. Ct. 14, 16 (53 L. Ed. 97) it was said that "by the unvarying decisions of this court the first ten amendments * * * are restrictive only of national action."

In Weeks v. United States, 232 U. S. 383, 398, 34 S. Ct. 341, 346 (58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177), the court said: "As to papers and property seized by the policemen, it does not appear that they acted under any claim of federal authority such as would make the amendment applicable to such unauthorized seizures. The record shows that what they did by way of arrest and search and seizure was done before the finding of the indictment of the federal court, under what supposed right or authority does not appear. What remedies the defendant may have against them we need not inquire, as the Fourth Amendment is not directed to individual misconduct of such officials. Its limitations reach the federal government and its agencies. Boyd Case, 116 U. S. 616 [6 S. Ct. 524, 29 L. Ed. 746]. And see Twining v. New Jersey, 211 U. S. 78 [29 S. Ct. 14, 53 L. Ed. 97]."

In Burdeau v. McDowell, 256 U. S. 465, 41 S. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159, it appeared that persons without a search warrant had entered a private office, blown open the safes, and abstracted therefrom certain private papers. They also forced open a desk in the room, and removed all the papers found therein. Later these papers found their way into the Department of Justice of the United States. The question was whether the government could retain papers so obtained and use them before a grand jury, and, if an indictment was found, use them at the trial against the party from whose possession the papers were in this manner obtained. It appeared that no federal official had anything to do with the seizure of the papers. The court said:

"The Fourth Amendment gives protection against unlawful searches and seizures, and, as shown in the previous cases, its protection applies to governmental action. Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies; as against such authority it was the purpose of the Fourth Amendment to secure the citizen in the right of unmolested occupation of his dwelling and the possession of his property, subject to the right of seizure by process duly issued. In the present case the record clearly shows that no official of the federal government had anything to do with the wrongful seizure of the petitioner's property, or any knowledge thereof until several months after the property had been taken from him and was in the possession of the Cities Service Com-

pany. It is manifest that there was no invasion of the security afforded by the Fourth Amendment against unreasonable search and seizure, as whatever wrong was done was the act of individuals in taking the property of another."

The court sustained the right of the government to retain the papers and said:

"We know of no constitutional principle which requires the government to surrender the papers under such circumstances. Had it learned that such incriminatory papers, tending to show a violation of federal law, were in the hands of a person other than the accused, it having had no part in wrongfully obtaining them, we know of no reason why a subpoena might not issue for the production of the papers as evidence. Such production would require no unreasonable search or seizure, nor would it amount to compelling the accused to testify against himself. The papers having come into the possession of the government, without a violation of petitioner's rights, by governmental authority, we see no reason why the fact that individuals, unconnected with the government, may have wrongfully taken them, should prevent them from being held for use in prosecuting an offense where the documents are of an incriminatory character."

And see Coates v. United States (C. C. A.) 290 F. 134; Thomas v. United States (C. C. A.) 290 F. 133; Hirata v. United States (C. C. A.) 290 F. 197; Kirkley v. United States (C. C. A.) 283 F. 34; United States v. O'Dowd (D. C.) 273 F. 600; United States v. Fallocco (D. C.) 277 F. 75, 81; Epstein v. United States (C. C. A.) 284 F. 567, 568; Kanellos v. United States (C. C. A.) 282 F. 461; McGrew v. United States (C. C. A.) 281 F. 809, 810; United States v. Burnside (D. C.) 273 F. 603; Youngblood v. United States (C. C. A.) 266 F. 795.

[2] The cases abundantly show that evidence obtained by state or municipal officers under an invalid search warrant, or without a warrant, may be used in a federal court in a criminal case under circumstances analogous to those in the case at bar. We have not overlooked the case of Legman v. United States, 295 F. 474, decided by the Circuit Court of Appeals in the Third Circuit. In that case the defendant was tried, convicted, and sentenced on an information which charged him with maintaining a common nuisance, the unlawful possession of a 5-gallon still, and with the unlawful manufacture of intoxicating liquor. Municipal police officers, acting without a search warrant, entered a private dwelling house. While they were still in the house certain prohibition agents entered, also without a warrant. No one of the local police and no one of the prohibition agents entered on the invitation either of the defendant or of his wife. In the course of the opinion, which was written by Judge Davis, he said:

"It does not appear that the policemen acted under any claim of federal authority. The Fourth Amendment is not directed to misconduct of state officials. Its limitations are confined to the federal government and its agencies. Boyd v. United States, 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746; Twining v. New Jersey, 211 U. S. 78, 29 S. Ct. 14, 53 L. Ed. 97; Weeks v. United States, 232 U. S. 383, 398, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Silverthorne Lumber Co. v. United States, 251 U. S. 385, 392, 40 S. Ct. 182, 64 L. Ed. 319. We are not concerned, therefore, in this review, with what the policemen did. Our inquiry is directed solely to the conduct of the federal agents. In their search they discovered all that the policemen found, and at least wine and whisky in addition. The testimony of Prohibition Agent Fisher covers the entire testimony of the policemen, and also the results of the search made by the prohibition agents alone. We do not, therefore, have any element of the conviction resting exclusively upon the testimony of the policemen, but the conviction on all three counts depends upon either the joint testimony of state and government officials, or upon that of government officials only."

The court went on to say:

"We are not disposed to speculate as to the proportionate effect upon the jury of the testimony of the policemen, on the one hand, and of the prohibition agent, on the other, as to the results of their separate or joint searches. The relative weight which the jury gave to the testimony of the policemen and agent is unknown. Whether the defendant would have been convicted on any count on the testimony of the policemen only is also unknown. It may be that, without the corroboration and independent testimony of the prohibition agent, the defendant would not have been convicted, or, on the other hand, he might have been convicted on all counts on the testimony of the policemen alone. What the jury might have done without the testimony of the prohibition agent is mere speculation, in which we cannot indulge to the injury of the defendant."

For the reason above stated, the judgment of conviction was set aside; and the case was remanded for a new trial. We have no criticism of that decision. So far as it has any application to the facts in this case, it is in conformity with the conclusion at which we have arrived.

But it is said that the numerous decisions in our own circuit have extended the protection of the Fourth and Fifth Amendments to cases in which the seizure was made by a state or municipal agency; and our attention is called to the following cases: In re Schuetze (D. C.) 299 F. 827; Kanellos v. United States (C. C. A.) 282 F. 461; Flagg v. United States, 233 F. 481, 147 C. C. A. 367; United States v. Bush (D. C.) 269 F. 455; United States v. McHie (D. C.) 194 F. 894; Dukes v. United States (C. C. A.) 275 F. 142.

The Kanellos Case was not decided in this circuit, but by the Circuit Court of Appeals of the Fourth District, and it asserts the principle that the Fourth and Fifth Amendments do not apply where a seizure is made by a state constable, and the evidence obtained by him, without warrant, was held admissible in evidence in a federal court. The Flagg Case was decided by this court. There is nothing in that case which supports the theory that the Fourth and Fifth Amendments apply to searches and seizures made without a search warrant by a state or a municipal officer. It is true that the seizure made in that case was made by the local police force of the city of New York. The books and papers seized were taken directly to the United States attorney's office in the Federal Building and were left in his possession. The defendant himself was taken directly to the federal authorities and was then placed under arrest under a warrant issued by the United States commissioner. This court said:

" * * * It is impossible to believe, in the face of these facts, that the United States, acting through its accredited agents, was not responsible for the arrest of the defendant and the seizure of his property. To attribute such an elaborate and carefully prepared proceeding as was planned to convict the defendant to a few local patrolmen, or to some unknown parties, in the face of the fact that the property was immediately carted to the federal courthouse, and remained there till the federal officials had obtained all the information desired, makes too severe a demand upon the imagination."

It was therefore held that evidence thus obtained was not competent against the accused in a federal court, and we reversed a conviction based upon such evidence. There is nothing in the opinion which indicates that the Fourth and Fifth Amendments have any application to seizures made by local police officers who act upon their own initiative and not upon the instigation of federal officials.

Dukes v. United States, supra, was decided by the Circuit Court of Appeals in the Fourth Circuit, and supports the contention of the defendant in the case at bar. We do not agree with it, and it appears to be in conflict with the subsequent case decided by the same court in Kanellos v. United States, already referred to herein.

But it is said that United States v. Bush, supra, was decided in a District Court in this circuit. The same is true of the case of In re Schuetze. The same judge decided both cases. In each the seizure was made by the local police, and the court thought, in the Bush 'Case, that the circumstances brought it within the decision of this court in the Flagg Case. In the Schuetze Case the court said:

"It is not to be assumed, from anything that has been said, that the federal government has not the legal right to accept evidence from policemen and informants generally, regardless of their position or office, and, indeed, such services as an aid to curb trafficking in intoxicating beverages is deserving of approval by the community; but, nevertheless, in detentions and seizures without a warrant, they are required to proceed on their own initiative, or acquire the facts incidentally in the discharge of their duties, unconnected with any arrangement or understanding with governmental authorities that the evidence may be secured in ways at variance with the provisions of the Constitution and laws of the United States. Warrants are available to every person, when it is shown to the satisfaction of a United States commissioner or other authorized officer under oath that probable cause exists for issuance."

It is true that there is no state Enforcement Act in the state of New York; the Mullen-Gage Law having been repealed. That fact, however, in our opinion, is quite immaterial. If all these local police officers did had been done by private citizens, acting without any color of authority, the result would not have been different.

[3] There was evidence, in the instant case, which justified the court in sending the

case to the jury. And we see no error in the charge. The jury was instructed in part as follows:

"* * * But, before you can convict this defendant, you must be satisfied beyond any reasonable doubt that if he had them in his possession, and that if he transported them, he must have had some notice, been put upon some notice, or been advised or had some knowledge, that the packages contained liquor with an unlawful content. That is the defense which is offered here. The defendant says substantially that it is true that these packages were handed over to him and were obtained from Mrs. Colonie, but, if they contained gin or liquor, he did not know it. That substantially covers the case, gentlemen, as I remember it. It is your responsibility and it is your duty to find out what the facts are, and whether the party is guilty or innocent, under the charge of the court."

[4] It is, however, assigned for error that the court erred in imposing sentence on both counts of the information. In this we concur, and think that what the court did amounted to imposing a double sentence for a single offense. The same facts proved unlawful possession and unlawful transportation. The only act of possession testified to was the possession necessarily involved in the transportation which was the subject of the second count. The officer testified that he saw the defendant leave the hallway of a five-story tenement house with a package which contained six bottles of gin, which he deposited in his automobile. There is no evidence that the accused lived on the premises, and his own testimony was that his home was in Brooklyn, on Decatur street. The possession was necessary and incidental to the act of transporation. There may be, and commonly is, possession which is distinct from transportation.

[5] Possession for a substantial time, and followed by transportation, might constitute two distinct offenses, just as possession for a substantial time, followed by a sale, might amount to two distinct offenses. But, where the only possession shown is that which is necessarily incidental to the transportation, the offense is single, and not double. Miller v. United States (C. C. A.) 300 F. 529, 534; Morgan v. United States (C. C. A.) 294 F. 82, 84; Rossman v. United States (C. C. A.) 280 F. 950, 953; Reynolds v. United States (C. C. A.) 280 F. 1. And the law is settled that, where a person is tried and convicted of a crime which has various incidents in-

cluded in it, he cannot thereafter be tried and punished for an offense consisting of one or more of such incidents. To do so would be to inflict double punishment. In re Nielsen, 131 U. S. 176, 185, 9 S. Ct. 672, 33 L. Ed. 118; United States v. Hampden (D. C.) 294 F. 345, 348.

The conviction and sentence under the first count is set aside. The judgment of conviction under the second count is affirmed.