## CRANK v. UNITED STATES.
### No. 9462.

Circuit Court of Appeals, Eighth Circuit.

Nov. 17, 1932.

Ned Stewart, of Lewisville, Ark., and W. S. Atkins, of Hope, Ark., for appellant.

W. N. Ivie, U. S. Atty., of Fort Smith, Ark. (G. T. Sullins, Asst. U. S. Atty., of Fort Smith, Ark., on the brief), for the United States.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

GARDNER, Circuit Judge.

Appellant, Shirley Crank, was convicted on four counts of an indictment charging violation of the National Prohibition Act (27 USCA). From the judgment entered thereon, he has appealed, assigning as error the denial of his motion to suppress the controlling evidence on which he was convicted, claiming that such evidence had been obtained by an unlawful search and seizure.

It is the contention of the appellant that the intoxicating liquors which were found in his home were seized by officers of the United States in conjunction with the sheriff of Miller county, Ark., and certain of his deputies, without a search warrant issued by any court of competent jurisdiction, and that the seizure was violative of the Fourth Amendment to the Constitution.

It is the contention of the government that the liquor was seized by the sheriff and his deputies without the assistance or co-operation of the officers of the United States, and that such seizure was made in executing a search warrant issued by the judge of the municipal court at Texarkana, Ark., or, if not so made, it was in any event lawful and warranted because made pursuant to probable cause.

It is conceded that the search warrant regularly issued under the laws of Arkansas, and that it was sufficient to justify a search and seizure by the state officers, if acting solely under the laws of Arkansas. The writ was based on an affidavit of a deputy sheriff, which alleged that he had reason to believe, and in truth did believe, that Shirley Crank kept in his possession intoxicating liquors for storage or for purpose of sale, or both, and that such liquors were kept or stored by said Shirley Crank at his residence or store, located near Garland City, Miller county, Ark. The warrant issued on this affidavit directed any sheriff, constable, or policeman in the state to search the place mentioned in the affidavit, where such intoxicating liquors were believed to be concealed, and to bring such

liquors which might be found, and the said Shirley Crank, before the municipal court. This warrant was in the hands of the deputy sheriff, T. M. Fisher, who, together with Deputy Sheriff Brackman and Prohibition Officers Quillen and Weaver, proceeded to the vicinity of appellant's home on the 26th of August, 1931, where they were later joined by the sheriff, when they forcibly entered appellant's residence and made the search and seizure challenged by appellant's motion to suppress.

On the motion to suppress, Jess M. Quillen, called on behalf of the defendant, testified that he was a prohibition enforcement officer, employed by the United States, and that he was so employed on the 25th and 26th days of August, 1931; that, in company with Mr. Weaver and some other officers, he searched the home of the defendant Shirley Crank; that he, with the other named officers, went to defendant's home, but found no one there; that a small building standing out from the house was stacked full of sacks of sugar, new kegs, charred kegs, and fruit jars, and in another small building back of his garage were cases of fruit jars and kegs, and "you could smell the odor of whisky coming from his house very strong. The house stood up off the ground some two feet, bricked up all around, with ventilator holes. There was brick set up on the inside of the basement under these holes. There was little sour gnats working in and out of those holes. We could smell the odor of whisky very strong. We stayed there all night until twelve o'clock the next day. In the meantime I came to Texarkana and got something to eat and got the sheriff, and he went back with me and stayed until twelve o'clock the next day, and we broke into the house and made a search.

"I had been working in that territory in conjunction with the State officers, making raids during that time just prior to that date. * * *

"Mr. Weaver and myself were prohibition enforcement officers and Mr. Tom Fisher and Mr. Brackman were deputy sheriffs. * * * We had information that a large quantity of whisky was stored there and that he was selling whisky from that place. * * * Mr. Tom Fisher the deputy sheriff and myself had had quite a lot of information and had talked together about having the information."

The witness then testified that he did not have a search warrant, that he did not break into the home himself, but that he helped to make the search. He was then asked: "Q.

And helped take out what you found in there? A. Yes, sir, from what we could see and smell and the information we had."

Mr. W. N. Weaver, the other prohibition enforcement officer, testified that he went with Deputy Sheriff Fisher and Prohibition Officer Quillen; that he had been working in connection with the county officers, and had discussed from time to time the question of Shirley Crank possessing whisky down there. He also testified as follows:

"I have had stated to me there was violation of the liquor laws at this place and I had information and I had this information when I went with the County officer down there. I have had instructions as to what it takes to obtain a search warrant of the United States law about a search warrant.

"Q. Then why didn't you obtain a search warrant? A. Well, after we got there and seen what we did and smelled the odor of whisky from that house and remaining there the time we did and talked to the brother of the defendant, we thought we had sufficient evidence under our instructions to search that house.

"Q. And you made that seizure of whisky on what you saw and the odor on the ground? A. Yes, sir."

In response to an offer by counsel for defendant to submit a copy of the affidavit upon which the search warrant issued, counsel for the government stated: "I do not think that is material because it is admitted that it was not made on a search warrant. The warrant never was served at all."

Rufe Turquette, the sheriff of Miller county, Ark., testified that during the month of August, 1931, in company with Prohibition Enforcement Officers Quillen and Weaver, and his Deputies Fisher and Brackman, "we searched the home of Mr. Shirley Crank." Speaking of entering the house, the sheriff testified: "Prohibition enforcement officers Weaver and Quillen were working with me and they went in with me and helped search the house."

He also testified: "When I got down there we broke a window glass and opened the window and went in."

The witness was interrogated with reference to the prohibition officers as follows:

"Q. How did Mr. Quillen and Mr. Weaver, who are prohibition enforcement officers— are they not? A. Yes, sir.

"Q. How did they become connected with it? A. They had been cooperating with us in different still raids in the county and they

happened to be here that morning. I really don't know about that particular part."

The witness further testified:

"I had been working in conjunction with the prohibition enforcement officers ever since I had been in office. I do not recall whether I had discussed this particular defendant or not. I would think perhaps we did. * * *

."I believe Mr. Fisher broke the window and we all went in and made the search. Prohibition enforcement officers Weaver and Quillen assisted us in making the search. We had all been conducting raids for the past thirty days and since I took office on the 31st day of July and *the prohibition enforcement officers were working right along in hand with me and informations were being filed by them on the cases we got in Federal Court."* (Italics supplied.)

Deputy Sheriff Fisher, produced as a witness on behalf of the government, among other things testified: "I invited them (prohibition officers Quillen and Weaver) to go with me and we went down to Shirley Crank's home about three o'clock. * * * We never served the search warrant on Shirley Crank until he came in and gave up and we arrested him about the 17th of September."

Referring to the prohibition enforcement officers, the witness further testified: "We had been working in conjunction with the Government officers and they had been working with us. I don't think I had discussed this case with the prohibition department and if I did I don't remember. I can't call to memory. I know we talked about going to a still that morning and wanting to search this place. I got the search warrant to search the place and if I mentioned it to them I have forgotten."

 If this seizure was one for which the prohibition enforcement officers were responsible, it is clear that the search warrant was no justification for the search and seizure. Even though sufficient under the Arkansas statutes, it was clearly bad under the Fourth Amendment and the laws of the United States because the affidavit upon which it issued was verified merely on information and belief. Byars v. United States, 273 U. S. 28, 47 S. Ct. 248, 71 L. Ed. 520; Go-Bart Importing Co. v. United States, 282 U. S. 344, 51 S. Ct. 153, 75 L. Ed. 374; Rice v. Ames, 180 U. S. 371, 21 S. Ct. 406, 45 L. Ed. 577; United States v. Cruikshank, 92 U. S. 542, 23 L. Ed. 588; United States v. Hess, 124 U. S. 483, 8 S. Ct. 571, 31 L. Ed. 516; Rose v. United States (C. C. A.) 45 F.(2d) 459; Simmons v. United States (C. C. A.) 18 F.(2d) 85; Ripper v. United States (C. C. A.) 178 F. 24; United States v. Borkowski (D. C.) 268 F. 408; United States v. Kelly (D. C.) 277 F. 485. It could, therefore, not justify a federal search and seizure.

 It is, however, urged that the search and seizure were conducted by the state officers and participated in by the federal enforcement officers "merely as citizens, and not in their official capacity as Federal officers." The mere presence of a prohibition enforcement officer at a search made by state officers, would not necessarily render the search a federal undertaking. But, where the search is made by state officers at the instigation of federal agents, or in co-operation with them, the Fourth Amendment is applicable. Byars v. United States, 273 U. S. 28, 47 S. Ct. 248, 249, 71 L. Ed. 520; Gambino v. United States, 275 U. S. 310, 48 S. Ct. 137, 138, 72 L. Ed. 293, 52 A. L. R. 1381; Flagg v. United States (C. C. A.) 233 F. 481; Thompson v. United States (C. C. A.) 22 F.(2d) 134, 135; Legman v. United States (C. C. A.) 295 F. 474, 477; Miller v. United States (C. C. A.) 50 F.(2d) 505, 507.

The Supreme Court of the United States considered this question in Byars v. United States, supra, where, in an opinion by Mr. Justice Sutherland, it is, among other things, said:

"The attendant facts here reasonably suggest that the federal prohibition agent was not invited to join the state squad as a private person might have been, but was asked to participate and did participate as a federal enforcement officer, upon the chance, which was subsequently realized, that something would be disclosed of official interest to him as such agent. * * *

"We do not question the right of the federal government to avail itself of evidence improperly seized by state officers operating entirely upon their own account. But the rule is otherwise when the federal government itself, through its agents acting as such, participates in the wrongful search and seizure. To hold the contrary would be to disregard the plain spirit and purpose of the constitutional prohibitions intended to secure the people against unauthorized official action."

The question was again before the Supreme Court of the United States in Gambino v. United States, supra. In the course of the opinion in that case, written by Mr. Justice Brandeis, it is said: "Evidence obtained through wrongful search and seizure by state officers who are co-operating with federal of-

ficials must be excluded. See Flagg v. United States (C. C. A.) 233 F. 481, 483, approved in Silverthorne [Lumber Co.] v. United States, 251 U. S. 385, 392, 40 S. Ct. 182, 64 L. Ed. 319 [24 A. L. R. 1426]. In Byars v. United States, 273 U. S. 28, 34, 47 S. Ct. 248, 71 L. Ed. 520, evidence obtained by state officers through search and seizure, made without a warrant and without probable cause, but in the presence of a federal official, was held inadmissible. The question here is whether, although the state troopers were not agents of the United States, their relation to the federal prosecution was such as to require the exclusion of the evidence wrongfully obtained."

Again the court said: "No federal official was present at the search and seizure, and the defendants made no attempt to establish that the particular search and seizure was made in co-operation with federal officials. But facts of which we take judicial notice (compare Tempel v. United States, 248 U. S. 121, 130, 39 S. Ct. 56, 63 L. Ed. 162), make it clear that the state troopers believed that they were required by law to aid in enforcing the National Prohibition Act, and that they made this arrest, search, and seizure, in the performance of that supposed duty, solely for the purpose of aiding in the federal prosecution."

In Thompson v. United States, supra, it is said: "The evidence in the case at bar indicates quite clearly that the search was, to say the least, a joint enterprise of the national prohibition agent, the state constable, and a third party. It is true that McCormick testified that he had charge of the raid, and had procured a search warrant to search the house; but, after procuring the warrant, he sought out Taylor and requested his assistance. It was shown that McCormick and Taylor conferred and co-operated daily about violations of the National Prohibition Act. * * * Taylor, the prohibition agent, did not deny or qualify in any way the testimony concerning the close association between him and the others who participated in the search. We can come to no other conclusion than that he took part in the search in his official capacity in disregard of the constitutional and statutory provisions referred to."

So, in the instant case, there seems to be no doubt that the prohibition enforcement agents participated in this search, not as private citizens, but in the discharge of their official duties.

In Legman v. United States, supra, cited with approval in Byars v. United States, it is said: " * * * If the search made by the prohibition agents was unreasonable, the fact that state officials, whom the Fourth Amendment does not reach, made a search either alone or with them, does not make reasonable and legal an otherwise unreasonable and illegal search, and a verdict based in part upon the disclosures of the unreasonable search cannot stand."

In Miller v. United States, supra, the Circuit Court of Appeals of the Third Circuit, in discussing the contention that certain evidence had been obtained by an unlawful search and seizure, said: "The Fourth Amendment is not directed to individual misconduct of state officers. Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652 [L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177]. Evidence wrongfully secured by persons other than federal officers is admissible in prosecutions for federal crimes. Burdeau v. McDowell, 256 U. S. 465, 41 S. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159. However, evidence obtained through wrongful search and seizure by state officers who are co-operating with federal officials must be excluded. Flagg v. United States (C. C. A.) 233 F. 481, approved in Silverthorne Lumber Co. v. United States, 251 U. S. 385, 392, 40 S. Ct. 182, 64 L. Ed. 319 [24 A. L. R. 1426]. The same may be true when an unlawful search and seizure by state officers were made in the presence of a federal official. Byars v. United States, 273 U. S. 28, 47 S. Ct. 248, 71 L. Ed. 520. And it is emphatically true where an unlawful search, seizure and arrest were made solely on behalf of the United States. This last proposition is the crux of nearly every case of this character."

The conclusion is irresistible that the search and seizure challenged in this case were the result of a joint enterprise participated in by the prohibition enforcement agents under color of office. They were therefore subject to the Fourth Amendment and the federal statutes.

Was the seizure justified as made on probable cause? As has been set forth, the officers had heard complaints to the effect that appellant had intoxicating liquor stored in his house. As they approached the house, they detected the fumes of whisky, and they observed in certain outhouses near the dwelling large quantities of sugar, a number of charred kegs, and fruit jars. The odor of whisky was very strong. The search revealed that the surmises of the officers were correct, as large quantities of liquor were found. The

appellant was not at home, and the officers kept watch of the premises for nearly twenty-four hours before entering them. The prohibition enforcement officers testified that they were of the opinion that under their instructions a search warrant was not necessary, because they had such facts as to give them probable cause for believing intoxicating liquors were being stored in the house, and hence they had a right to enter and search the premises.

In the case of Taylor v. United States, 286 U. S. 1, 52 S. Ct. 466, 467, 76 L. Ed. 951, recently decided, the Supreme Court held a search and seizure unreasonable made under circumstances somewhat similar to those in the instant case. In that case certain prohibition agents, having heard complaints over a period of about a year relative to certain premises, decided to investigate, and went at once to a garage which was located on the corner of a city lot, adjacent to the dwelling house in which Taylor resided. In disposing of the question the court said:

"As the agents approached the garage, they got the odor of whisky coming from within. Aided by a searchlight, they looked through a small opening and saw many cardboard cases which they thought probably contained jars of liquor. Thereupon they broke the fastening upon a door, entered, and found 122 cases of whisky. No one was within the place, and there was no reason to think otherwise. While the search progressed, Taylor came from his house and was put under arrest. The search and seizure were undertaken with the hope of securing evidence upon which to indict and convict him.

"Although over a considerable period numerous complaints concerning the use of these premises had been received, the agents had made no effort to obtain a warrant for making a search. They had abundant opportunity so to do and to proceed in an orderly way even after the odor had emphasized their suspicions; there was no probability of material change in the situation during the time necessary to secure such warrant. Moreover, a short period of watching would have prevented any such possibility.

"We think, in any view, the action of the agents was inexcusable and the seizure unreasonable. The evidence was obtained unlawfully and should have been suppressed. See Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790; United States v. Lefkowitz, 285 U. S. 452, 52 S. Ct. 420, 76 L. Ed. 877, and cases there cited.

"Prohibition officers may rely on a distinctive odor as a physical fact indicative of possible crime; but its presence alone does not strip the owner of a building of constitutional guaranties * * * against unreasonable search."

In United States v. Lefkowitz, 285 U. S. 452, 52 S. Ct. 420, 423, 76 L. Ed. 877, which is cited in the Taylor Case, it is said: "The Fourth Amendment forbids every search that is unreasonable and is construed liberally to safeguard the right of privacy. Byars v. United States, 273 U. S. 28, 32, 47 S. Ct. 248, 71 L. Ed. 520. Its protection extends to offenders as well as to the law abiding. Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Agnello v. United States, 269 U. S. 20, 32, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409. The authority of officers to search one's house or place of business contemporaneously with his lawful arrest therein upon a valid warrant of arrest certainly is not greater than that conferred by a search warrant issued upon adequate proof and sufficiently describing the premises and the things sought to be obtained. Indeed, the informed and deliberate determinations of magistrates empowered to issue warrants as to what searches and seizures are permissible under the Constitution are to be preferred over the hurried action of officers and others who may happen to make arrests. Security against unlawful searches is more likely to be attained by resort to search warrants than by reliance upon the caution and sagacity of petty officers while acting under the excitement that attends the capture of persons accused of crime."

In view of these recent decisions by the Supreme Court, which in principle we are unable to distinguish from the instant case, there seems no escape from the conclusion that the search and seizure were unreasonable, and the evidence, having been obtained unlawfully, should have been suppressed.

It follows that the judgment appealed from must be and is reversed, and the cause remanded, with directions to grant the appellant a new trial.