[Crim. No. 1787. Second Appellate District, Division Two.—July 11, 1929.]

THE PEOPLE, Respondent, v. J. B. KINSER, Appellant.

George W. Rochester for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, and J. D. Richer for Respondent.

CRAIG, J.—The appellant, together with two co-defendants, was charged by information filed in the Superior Court of Orange County with having contributed to the delinquency of a minor, and appeals from the judgment of the Superior Court finding him guilty as charged. The grounds assigned for reversal are asserted insufficiency of the information and of the evidence.

Briefly stated, it was alleged that J. B. Talley, Lucy Martinez and Kinser did wilfully and unlawfully contribute to

the delinquency of a female minor child, to wit, Irene Parra, aged sixteen years, said minor child then and there coming within the provisions of the Juvenile Court Law [Stats. 1915, p. 1225]; that they placed said minor in danger of leading an idle, dissolute, lewd and immoral life, by giving her intoxicating liquor and causing her to become drunk, and by taking her to the apartment of the defendant Talley and there leaving her alone in a room with him.

The defendants Talley and Martinez pleaded guilty and the latter testified on behalf of the People. It is appellant's contention, principally, that under numerous authorities cited in his behalf the evidence is not alone insufficient to support the judgment, but was such as to require an acquittal. It is insisted in his business of driving taxis he merely answered a call, drove the parties to destinations requested by them and that while liquor was consumed and the minor may have imbibed to excess, he was not the instigator nor aider of the commission of any offense, and that in any event the minor did not become delinquent.

The positive testimony of six witnesses called by the People, including Irene Parra, is to the effect that on or about January 10, 1929, Lucy Martinez telephoned a taxi company for whom Kinser was a chauffeur and with whom she had previously ridden without charge; that they drove to the home of Miss Parra, where she joined them, and thence to the center of the city of Santa Ana, where they picked up Talley, whereupon the men and the two girls drove to Talley's apartment. Miss Martinez said to Talley, who was waiting for them on a street corner, "Well, I got a partner for you," and at his apartment she asked him if he had any wine, to which he replied in the affirmative, produced a bottle, and they all drank the contents. Soon afterward Talley suggested that Miss Parra go to another room with him, which she hesitated to do, but the Martinez woman told her to "go on, he won't hurt you," and she complied. Other occurrences between them were excluded from the record, it appearing that they were in a separate room, with the door closed. Thereafter Kinser suggested that he drive the girls about town in the air to "sober up," though each denied that she was intoxicated at the time. Accordingly, they left Talley at home, drove toward Balboa and at a house or service station Kinser obtained a bottle of gin,

which he and his two companions drank, and after driving around, Irene Parra was returned to her home so intoxicated that she was unable to proceed from the machine to her house without assistance. Two physicians who examined her testified that she was in a comatose condition and could not be aroused; that her breath smelled strongly of alcohol, her pulse was above normal, her eyes were glassy and when they were asked if she was slightly or considerably intoxicated, stated that she was "considerably so."

Owing to the illiteracy of witnesses and the inexperience of the minor, there is much apparent conflict in their testimony. Miss Martinez swore that the beverage supplied by Talley at his apartment was gin, while other evidence tended to show that it was wine. Appellant vigorously denied all of the foregoing statements of witnesses under oath which tended to connect him with any wrongdoing, and their testimony is branded as perjured and unreliable. It is quite plainly to be observed from the record that the girls were of foreign extraction and in some instances failed to understand, but in the main their ultimate answers harmonized and were corroborated by many unquestioned circumstances. Appellant also corroborated their testimony in substantial detail, but his memory was remarkably vague as to essential acts and circumstances in his immediate presence. His flat denials of the testimony of other witnesses, tending to show culpability, were not corroborated. In this state of the record we are neither authorized nor inclined to disturb the conclusion of the trial court that the evidence preponderated against innocence. It is argued for appellant that he was a mere innocent bystander and a victim of circumstances, and that he was not responsible for the derelictions of his fares, since, under cited authority, participation in the commission of an offense may not be legally inferred from unavoidable presence and observation of its perpetration. But eyewitnesses testified to facts which constituted him a participant in procuring, drinking and sharing the liquors with Irene Parra and two other persons and in driving them about without charge. Surely, it cannot be urged with sincerity that these are necessary adjuncts to his vocation as driver of a public conveyance for hire.

With the remaining points, that the information failed to charge an offense as contemplated by the Juvenile

Act, and that evidence was insufficient to warrant a conviction because Irene Parra was induced to embark upon a first escapade, and that there is no evidence that she became morally depraved because of her experience, we cannot coincide. It was alleged, and the evidence strongly tended to show, that the minor was taken riding by the three defendants, who gave her intoxicating liquor, made her drunk, and guided her into the apartment of one of the men, with whom she was left alone, in one of the rooms. It also appears that when she was returned to her parents she was helpless, and that she was unconscious when examined. Section 21 of the act provides that any person who shall commit any act or omit the performance of any duty, which act or omission tends to cause or encourage a person under twenty-one years of age to do any act or follow any course of conduct within the provisions of said act, shall be guilty of a misdemeanor.

In response to the contention that the prosecuting witness suffered no harm from alleged associations with the defendant, and that there was no proof that she was a delinquent, a like defense was rejected in *People* v. *Cohen*, 62 Cal. App. 521 [217 Pac. 78]. As was there said:

"On the other hand, we are of the opinion that the law in providing that a person shall be deemed guilty of violating the statute when he commits any act which causes or manifestly tends to cause a person under the age of 21 years to come within the provisions of section 1 thereof, means that his guilt attaches whenever he commits such an act, independent of the success of his efforts, or its effect upon the minor.

"The purpose of the juvenile law as now framed, as we have already seen, is to protect the youth of our state from those evil and designing persons who would lead them astray, and we are not disposed to in any way impair its usefulness by giving any narrow or strained construction to any of its plain and obvious provisions."

*People* v. *Hemma*, 94 Cal. App. 25 [270 Pac. 457], and other decisions since the amendment of the statute, have been unanimous in holding that its provisions are intended to be preventive and protective, and that to hold that a conviction thereunder must depend upon proof of the accomplishment

of the wrong against which its framers sought to provide a safeguard would often practically result in its nullification.

The judgment is affirmed.

Thompson (Ira F.), J., concurred.

Works, P. J., being absent, did not participate in this decision.