[Crim. No. 2281.   First Dist., Div. One.   May 29, 1944.]

THE PEOPLE, Respondent, v. GENE KRUPA, Appellant.

J. W. Ehrlich, Roy A. Sharff and Alfred M. Miller for Appellant.

Robert W. Kenny, Attorney General, David K. Lener, Deputy Attorney General, Matthew Brady, District Attorney, and Leslie C. Gillen, Assistant District Attorney, for Respondent.

PETERS, P. ■■■■ After a trial by jury, defendant was found guilty of a violation of section 11714 of the Health and Safety Code. From the judgment of conviction, and from the orders denying his motions for a new trial, in arrest of judgment, and to stay the pronouncement of judg-

ment, he prosecutes this appeal. The orders denying his motions in arrest of judgment and to stay pronouncement of judgment are not appealable, but are reviewable on the appeal from the judgment. For this reason the direct appeals from such orders must be dismissed. (*People* v. *Williams*, 184 Cal. 590 [194 P. 1019]; *People* v. *Fitzgerald*, 14 Cal. App.2d 180 [58 P.2d 718]; see cases collected 8 Cal.Jur. p. 492, § 508.)

The information, as originally framed and as amended, contained two counts. The first count charged a violation of section 11714 of the Health and Safety Code, a felony. That section provides: "Every person who hires, employs, or uses a minor in unlawfully transporting, carrying, selling, preparing for sale, peddling or using any narcotic is guilty of a felony punishable by imprisonment in the State prison for not less than one year nor more than six years, and for each subsequent offense shall be imprisoned in the State prison for not less than six years." The second count charged a violation of section 702, Welfare and Institutions Code, that is, contributing to the delinquency of a minor, a misdemeanor.

When arraigned, defendant pleaded guilty to the misdemeanor charge and not guilty to the felony charge. He also interposed the plea, as to count one, that the judgment about to be entered upon his plea of guilty to count two, would be a conviction of the same offense charged in count one. The court, with full knowledge that defendant intended to rely on the judgment of conviction under count two, pronounced judgment on that count and sentenced appellant to ninety days' imprisonment and a fine of $500. The court then ruled that conviction of count two was not a bar to a prosecution of count one, and the case proceeded to trial on that count.

The evidence produced on the trial amply supports the judgment. It shows that on the night of January 18, 1943, Krupa instructed his valet and property man Pateakos, a minor of the age of twenty years, to go to his, Krupa's, hotel room and remove an envelope from his coat pocket; that Pateakos removed the envelope which contained thirty-seven marijuana cigarettes from Krupa's coat pocket; that he was attempting to leave the hotel with that envelope, and another containing two and one-half such cigarettes, removed by Pateakos from the desk in Krupa's room, when he, Pateakos, was arrested by two agents of the Federal Bureau of Narcotics. This evidence obviously supports the implied finding

of the jury that appellant employed or used "a minor in unlawfully transporting" or "carrying" a "narcotic" in violation of section 11714 of the Health and Safety Code.

On this appeal, no direct attack is made upon the sufficiency of the evidence. However, in addition to the main contention of double jeopardy, appellant does contend that several other serious, prejudicial, and reversible errors were committed at the trial. In view of the conclusion that we have come to on the question of jeopardy, it is not necessary to discuss these other alleged errors.

Count one of the amended information charged a violation of section 11714 of the Health and Safety Code in the following language: "The said Gene Krupa, on or about the 18th day of January, A.D. nineteen hundred and forty-three, at the City and County of San Francisco, did hire, employ and use one John Pateakos, a minor of the age of twenty years, in unlawfully transporting and carrying a quantity of cigarettes containing a narcotic, to-wit: marihuana, also known as cannabis indica and also as cannabis americana."

The second count, as set forth in the amended information, is as follows: "Gene Krupa is also accused by the District Attorney of the City and County of San Francisco, State of California, by this information, of the crime of misdemeanor, to-wit: Violation of Section 702 of the Welfare and Institutions Code of the State of California committed as follows: The said Gene Krupa on or about the 18th day of January A.D. nineteen hundred and forty-three at the City and County of San Francisco, State of California, did endeavor to induce and persuade and did induce and persuade one John Pateakos, a male minor of the age of twenty years, to go to the room of him, the said Gene Krupa and obtain and remove and transport therefrom from a pocket of a coat located therein an envelope containing a quantity of narcotic, to-wit: marihuana, also known as cannabis indica, and also known as cannabis americana, and said Gene Krupa did also then and there permit and allow said John Pateakos to handle and have in the possession of said John Pateakos cigarettes containing marihuana, the said John Pateakos being then and there in the employ of said Gene Krupa, all of which wilful and unlawful acts and course of conduct of said Gene Krupa as aforesaid did thereby, then and there, manifestly tend to, and did encourage, cause and contribute to the said John Pateakos becoming and remaining such a person as is de-

scribed in said Section 700 of said Welfare and Institutions Code, to-wit: A person under twenty-one years of age who violates any law of this State or any ordinance of any town, city, or county, of this State defining crime contrary to the form, force and effect of the Statute in such case made and provided, and against the peace and dignity of the People of the State of California.''

It will be noted that the second count charges that the appellant violated section 702 of the Welfare and Institutions Code in that he induced the minor to do an act which tended to cause, and caused, the minor to become a law violator. The minor's violation of law, as alleged in the information, was to ''obtain'' marihuana from the pocket of a coat in appellant's room, and to ''remove and transport'' the marihuana thus obtained.

The attorney-general, in his brief as originally filed in support of the judgment, argued that the two offenses were not necessarily identical because, consistently with the information, the marihuana referred to in count one may not have been the same marihuana referred to in count two. In a letter written after this brief was filed, however, he requested that this portion of his brief be stricken and disregarded. The attorney-general now concedes (and the concession is in accord with the facts) that both counts in the amended information relate to the same incident, that is, to the minor obtaining the marihuana from Krupa's coat pocket and carrying it on his person until he was apprehended. Among other things, the letter states: ''Count Two as amended in our opinion is not substantially different than Count One. There is additional language used in Count Two as amended relating to possession which it would appear may be implied in the allegations of Count One.'' Thus it is now admitted that the only possession of marihuana by the minor involved in either count was the possession involved in the coat pocket incident described in detail in count two. This is of considerable importance. It has been held in prosecutions for violations of the liquor laws that where the only possession shown is that incident to transporting the liquor, and it does not appear that there was a prior or subsequent possession, the possession and transportation may not be treated as two separate offenses. (*People* v. *Clemett*, 208 Cal. 142 [280 P. 681] ; *In re Chaus*, 92 Cal.App. 384 [268 P. 422] ; *People* v. *Buchanan*, 106 Cal.App.Supp. 765 [288 P.

50]; *Schroeder* v. *United States,* 7 F.2d 60. See note 74 A.L.R. 411, citing also cases *contra.*) Since there admittedly was no possession here except that involved in the coat pocket incident, it cannot be held that count two is based in part on a different violation of law by the minor, that is, on a separate unlawful possession not incident to the unlawful transportation which is the basis of count one.

The statements of the law applicable to the doctrine of double jeopardy are by no means clear, and in some respects inconsistent. (See, generally, for traditional statements of the rule, 1 Bishop's Criminal Law (9th ed.) p. 776; 1 Wharton's Criminal Law (12th ed.) p. 535, § 394; 2 Freeman on Judgments (5th ed.) p. 1370, § 650; 7 Cal.Jur. p. 955, § 97; 15 Am.Jur. p. 53, § 380.) ■ As stated by the Supreme Court of this state, in its more recent decisions, the rule is that a defendant may be convicted of two offenses when they differ in their necessary elements and one is not necessarily included within the other. (*People* v. *Craig,* 17 Cal.2d 453 [110 P.2d 403]; *People* v. *Warren,* 16 Cal.2d 103 [104 P.2d 1024]; *People* v. *Herbert,* 6 Cal.2d 541 [58 P.2d 909]; *People* v. *Coltrin,* 5 Cal.2d 649 [55 P.2d 1161]; *People* v. *Day,* 199 Cal. 78 [248 P. 250].) That is, although offenses are not the *same,* if one is necessarily included in the other, the guaranty against double jeopardy applies. Under all tests, the doctrine of included offenses is recognized. Section 1023, Penal Code provides: "When the defendant is convicted or acquitted, or has been once placed in jeopardy upon an indictment of information, the conviction, acquittal, or jeopardy is a bar to another indictment or information for the offense charged in the former, or for an attempt to commit the same, *or for an offense necessarily included therein,* of which he might have been convicted under that indictment or information." (Italics ours.) Thus it is held that every battery includes an assault, as do mayhem, rape and robbery. (*People* v. *McDaniels,* 137 Cal. 192, 197 [69 P. 1006, 92 Am. St.Rep. 81, 59 L.R.A. 578]; *People* v. *Defoor,* 100 Cal. 150 [34 P. 642].) Murder includes manslaughter. (*People* v. *Ny Sam Chung,* 94 Cal. 304 [28 P. 642, 28 Am.St.Rep. 29].)

■ Section 1023 in terms applies where the prosecution for the higher offense is first. But it is thoroughly settled that the same rule applies where the prosecution for the lesser offense comes first. (*People* v. *McDaniels, supra; People* v.

*Ny Sam Chung, supra.*) Where prosecution for the included offense is first, and there is an acquittal, the defendant may not thereafter be tried for the greater, for if he is not guilty of the lesser included offense he cannot be guilty of the greater. A conviction of the lesser is held to be a bar to prosecution for the greater on the theory that to convict of the greater would be to convict twice of the lesser. These propositions are developed at length in *People* v. *McDaniels* and *People* v. *Ny Sam Chung, supra.*

It should also be noted that even where crimes arising from the same incident are distinct and noninclusive in the sense that each requires an element not essential to the other, an acquittal in one may bar prosecution for the other. Where offenses possess a common element, as well as distinct elements, an acquittal, where it can be shown to be a decision negating the existence of the required element, will be res judicata in those jurisdictions which recognize that doctrine as obtaining in criminal proceedings. (See 2 Freeman on Judgments (5th ed.) p. 1364, § 648; 24 Minn.L.Rev. 558; 19 Minn.L.Rev. 476; 10 Wash.L.Rev. 198.)

■ It is clear that where an offense cannot be accomplished without necessarily committing another offense, the latter is a necessarily included offense. If, in the commission of acts denounced by one statute, the offender must always violate another, the one offense is necessarily included in the other. In the case herein a violation of section 11714, Health and Safety Code, inevitably and necessarily involves a violation of section 702, Welfare and Institutions Code. It is impossible for a person to commit a violation of section 11714 of the Health and Safety Code without committing the misdemeanor denounced by section 702 of the Welfare and Institutions Code. The person who uses a minor unlawfully to transport a narcotic has necessarily induced the minor to do an act which renders the minor a person subject to section 700, Welfare and Institutions Code, that is, a person who has violated a law of the state (Welf. & Inst. Code, § 11160), and this constitutes an offense under section 702 on the part of the person who has thus induced the minor to violate the law.

To repeat, section 11714, Health and Safety Code, cannot be violated without also offending against section 702, Welfare and Institutions Code. Having regard for the incident upon which both counts are admittedly based, as set forth in

count two, exactly the same facts were required to prove an offense under count one as to establish a crime under count two. Every element of the felony charge was necessary and indispensable to a conviction of the misdemeanor charge.

While it is true that section 11714 cannot be violated without offending also against section 702, it is apparent, as respondent urges, that the converse is not true. A person may violate section 702, that is contribute to the delinquency of a minor, otherwise than by causing such minor to become a law violator, or by causing him to violate a law dealing with another subject' than narcotics. If a violation of section 702 always involved a violation of section 11714 (as a violation of § 11714 always involves a violation of § 702) the offenses would be identical in the sense that neither would involve an element not necessary for the other. But, as we have said above, the cases are clear that the principle of double jeopardy applies where one offense is necessarily included in the other, as well as where they are identical. It is of the nature of included offenses that the included offense may be committed without accomplishing the inclusive offense.

In the instant case, the essence of both offenses charged against appellant was the commission of acts which contributed or tended to contribute to the delinquency of a minor. It is not necessary to establish an offense under section 702 that the minor should actually have been debauched or corrupted. (*People* v. *Kinser,* 99 Cal.App. 778 [279 P. 488].) Nor is such proof necessary to constitute the crime under section 11714. Under section 702 the offense of contributing to the delinquency of a minor is a misdemeanor. Likewise, some other violations of the code provisions dealing with narcotics are misdemeanors. (See Health and Saf. Code, §§ 11710-11716.) But under section 11714 where a minor is used unlawfully to transport, carry, sell, etc. any narcotic, the person thus using the minor is guilty of a felony. Though not expressed, the apparent reason for increasing the grade of crime above that which prevails generally as to narcotic offenses is the tendency of the act denounced by section 11714 to contribute to the delinquency of the minor. ▮ Viewed in relation to section 702, where contributing to the delinquency of a minor takes the form of using the minor unlawfully to transport narcotics, the offender is subject to prosecution under section 11714, which creates a felony carrying a heavier

penalty than section 702. However, the person accused should not also be subject to the misdemeanor penalty. He is liable to prosecution under either section, but a conviction or acquittal of an offense under one bars prosecution under the other. ▇▇ Where the State instead of prosecuting first for the offense which carries the heavier penalty, prosecutes for the offense which carries the lighter penalty, or accepts a plea of guilty to that offense, it is without right thereafter to prosecute for the offense which carries the heavier penalty. This follows from the thoroughly settled principle that a conviction or acquittal of an included offense bars prosecution for the greater offense. (*People* v. *McDaniels, supra.*)

By way of illustration, robbery is of the first degree where perpetrated by torture or by a person armed with a dangerous or deadly weapon. (Pen. Code, § 211a.) This does not mean that where the robbery is thus committed the defendant may be punished for both robbery of the first degree and for robbery of the second degree, the offense he would have committed had he acted otherwise than he did in fact, that is, if he had accomplished the crime without torture or use of such weapon. So in the present case the defendant may not be convicted of both a felony and a misdemeanor on the basis of the same incident because if he had contributed to the delinquency of the minor otherwise than he did in fact he could have been prosecuted for a misdemeanor only.

The principle of included offenses is recognized in the rule, referred to above, that every battery includes an assault, as do mayhem, rape and robbery. (*People* v. *McDaniels, supra; People* v. *Defoor, supra.*) We have heretofore referred to the cases arising under liquor laws in which it has been held that the possession involved in the transportation of liquor may not be prosecuted after conviction or acquittal on charges of transportation. (*People* v. *Clemett, supra; In re Chaus, supra; People* v. *Buchanan, supra; Schroeder* v. *United States, supra.*) In *People* v. *Lopez*, 46 Cal.App.2d 857 [117 P.2d 10], section 1159, Penal Code, was involved. It provides: "The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense." The defendant was charged with aiding and abetting her co-defendant in commission of statutory rape. She was found guilty of contributing to the delinquency of a

minor, that is, violation of section 702, Welfare and Institutions Code. She contended that the offense of which she was convicted was not necessarily included in the offense charged. The judgment against her was affirmed.

In the case of some included offenses, an additional element is required to establish the greater offense, as with assault and battery. In the present case it is not even required that additional facts be proved. The identical facts which are required to convict under count two constitute a violation of section 11714.

As already pointed out, it is the law that a defendant may be convicted of two offenses when they differ in their necessary elements and one is not necessarily included within the other. (*People* v. *Craig, supra; People* v. *Warren, supra; People* v. *Herbert, supra; People* v. *Coltrin, supra.*) Thus in *People* v. *Coltrin, supra,* it was held that two separate noninclusive offenses are committed where the victim dies of an illegal abortion. Neither offense necessarily involves the commission of the other. Abortion does not necessarily involve the death of the victim, and murder may be committed otherwise than in the perpetration of an illegal abortion. Moreover, where death results from an abortion the wrongdoer has accomplished two wrongs. He has put an end to the embryo, as well as to the victim of the illegal operation. But a violation of section 11714 necessarily constitutes a violation of section 702.

. Statutory rape and incest arising out of the same act have been held to constitute separate noninclusive crimes. (*People* v. *McCollum,* 116 Cal.App. 55 [2 P.2d 432].) Each requires proof of an element not essential to the other, incest, the prohibited relationship, rape, want of consent, actual or constructive. Either may be committed without the other. Where the offender commits both offenses by means of a single act his conduct is doubly wrong. He should be punished for both crimes, although they arise from a single act. But a violation of section 11714 cannot be accomplished without violating section 702.

Death resulting from reckless driving affords another illustration of separate noninclusive offenses. (*People* v. *Herbert,* 6 Cal.2d 541 [58 P.2d 909].) Where death ensues from reckless driving the offense of manslaughter is complete. But manslaughter may arise otherwise than through automobile

injury and death. Conversely the offense of reckless driving is complete although there is no injury to person or property.

In *People* v. *Day*, 199 Cal. 78 [248 P. 250], the question decided was that assault by means or force likely to produce great bodily injury (Pen. Code, § 245), and the crime denounced by section 244, Penal Code, were separate, noninclusive offenses. Section 244 provides: "Every person who willfully and maliciously places or throws, or causes to be placed or thrown, upon the person of another, any vitriol, corrosive acid, or caustic chemical of any nature, with the intent to injure the flesh or disfigure the body of such person, is punishable by imprisonment in the state prison not less than one nor more than fourteen years." It is apparent that an assault by means or force likely to produce great bodily injury could occur by other force or means than vitriol, corrosive acid, or caustic chemical. But to establish the separate, noninclusive character of the two offenses the opinion found it necessary to demonstrate that there could be a violation of section 244 without inevitably committing an assault by means or force likely to produce great bodily injury. This the court did by holding that the crime under section 244 would be accomplished although the vitriol, corrosive acid, or caustic chemical thrown was so small in quantity or weak in strength as to be incapable of producing great bodily injury. Illustrations could be multiplied indefinitely.

The decisions in *People* v. *Stangler*, 18 Cal.2d 688 [117 P.2d 321] and *People* v. *Bevans*, 19 Cal.App.2d 288 [65 P.2d 92], are not inconsistent with these conclusions. In the Stangler case the defendant was charged in separate counts with statutory rape and violation of section 288, Penal Code (lewd and lascivious acts upon the body of a child under 14), based upon the same incident. He was acquitted of violating section 288, but convicted of rape. He contended that the verdicts were inconsistent and that the acquittal of violation of section 288, was, therefore, an acquittal of rape. Statutory rape does not inevitably involve a violation of section 288, for the offense under that section must be committed upon the body of a child under the age of fourteen, whereas statutory rape is perpetrated where the female is under eighteen. Although there is some confusing language in this case, it is clear that the court did not purport to overthrow the law as set forth *in extenso* in such cases as *People* v. *Coltrin, supra; People* v. *Herbert, supra,* and *People* v. *Day,*

*supra.* (As to effect of inconsistent verdicts generally, see 43 Harv.L.Rev. 657; 28 Mich.L.Rev. 339; 14 Cal.L.Rev. 336; 10 So.Cal.L.Rev. 208.) It should also be pointed out that it appears from an examination of the record in *People* v. *Stangler* that, insofar as the information charged violation of section 288, it was not based on the rape proper, but on acts preceding it, which, it has been held, may constitute a separate offense. (*People* v. *Jameson,* 136 Cal.App. 10 [27 P.2d 935]; *People* v. *McAfee,* 82 Cal.App. 389, 405 [255 P. 839].)

In the Bevans case, *supra,* the defendant was convicted on two counts, one charging contributing to the delinquency of a minor, the other violation of section 288. The court pointed out that one act was proved which would not come under the provisions of section 288, Penal Code, as it was not "upon or with the body, or any part or member thereof" of the child, but which was clearly denounced by the juvenile court law.

It has been said that no rule of thumb is adequate to all cases; that any single test may reach absurd or unjust results in particular cases. (24 Minn.L.Rev. 556, 562; 22 C.J.S. 414.) Regard should be had to the type of offense, notions of fairness, and the purpose of the statute defining the crime involved, etc. (18 Cal.L.Rev. 171.) In the case herein it is obvious that fairness requires that the defendant should not be punished twice for what he did.

It is true that the effect of this holding is that defendant escapes punishment for the more serious offense, violation of section 11714, Health and Safety Code, a felony, and suffers only the lighter punishment prescribed for an offense under section 702, Welfare and Institutions Code, a misdemeanor. This result does not, necessarily, show a weakness in the law. The doctrine that no man shall be put in jeopardy twice for the same offense is based upon sound and fundamental principles, which are recognized by both the federal and state Constitutions. The fault in the present case, if any there be, lies in the procedure adopted. It was within the discretion of the law enforcement authorities to prosecute defendant for either the felony or the misdemeanor. They elected to frame an information charging the two identical offenses. This made it possible for the defendant to adopt the procedure he did.

It should also be pointed out that the record shows that the plea to both counts was made at the same time. Judgment

was not pronounced on the plea of guilty to the second count until after defendant had made his plea of not guilty and double jeopardy to the first count. The court, therefore, pronounced judgment on count two knowing that defendant intended to rely on that judgment in bar of the felony charge. An examination of the pertinent code sections indicates that the trial court, instead of accepting the plea of guilty to count two, and pronouncing judgment thereon, had it desired to hold defendant for the higher offense, could very likely have dismissed the second count, even after plea, and have refused to enter judgment thereon. Section 1021 of the Penal Code provides: "If the defendant was formerly acquitted on the ground of variance between the indictment or information and the proof, or the indictment or information was *dismissed* upon an objection to its form or substance, or *in order to hold the defendant for a higher offense, without a judgment of acquittal, it is not an acquittal of the same offense."* (Italics added.)

The above section recognizes a right in the court to dismiss a charge in order to hold the defendant for a higher offense. It is not provided that the dismissal must be made before plea. It has been held that a dismissal made to hold for a higher offense after a jury has been impaneled and sworn, that is, after jeopardy has attached, will bar a subsequent prosecution for a higher offense in which the dismissed charge is included. (*People* v. *Ny Sam Chung,* 94 Cal. 304 [28 P. 642, 28 Am.St.Rep. 29]; *People* v. *Hunckeler,* 48 Cal. 331; 7 Cal.Jur. 944, 949, 953; see, also, *People* v. *Horowitz,* 131 Cal.App. Supp. 791 [19 P.2d 874].) But it does not follow that where the defendant has not submitted himself to trial, but has offered a plea of guilty to the count charging the lighter offense, that the court is without right to dismiss that count in order to hold the defendant for the higher offense.

There are also sections 1385 and 1387, Penal Code. Section 1385 provides: "The court may, either of its own motion or upon the application of the district attorney, and *in furtherance of justice,* order an action or indictment to be dismissed. The reasons of the dismissal must be set forth in an order entered upon the minutes." (Italics added.) By section 1387 it is provided that the order for dismissal is not a bar if the offense is a felony. (*People* v. *Smith,* 143 Cal. 597 [77 P. 449]; *People* v. *Brown,* 42 Cal.App. 462 [183 P. 829]; *People* v. *Saenz,* 50 Cal.App. 382 [195 P. 442].)

As to justices' courts there is a specific section, section 1429, Penal Code, which permits the judge to reject a plea to the lesser offense in order to hold the defendant for the greater. It provides in part as follows: ". . . If the defendant pleads guilty, the court may, before entering such plea or pronouncing judgment, examine witnesses to ascertain the gravity of the offense committed; and if it appear to the court that a higher offense has been committed than the offense charged in the complaint, the court may order the defendant to be committed or admitted to bail, to answer any indictment which may be found against him by the grand jury, or any information which may be filed by the district attorney."

If sections 1021, 1385 and 1387 of the Penal Code, referred to above, are not broad enough to enable the superior court to reject the plea of guilty to the lesser offense in order to hold the defendant for the greater, then the matter calls for legislative rectification.

The appeals from the orders denying the motions for arrest of judgment and to stay pronouncement of the judgment are dismissed. The judgment and order denying the motion for a new trial are reversed.

Ward, J., concurred.

KNIGHT, J.—I dissent upon the following grounds: First, the reversal of the conviction in my opinion is based not only on a misconstruction of material portions of the record, but also on legal theories which are out of line with the established law of this state as declared in numerous decisions dealing with the question of double jeopardy. Secondly, it will be noted that factually the reversal rests entirely upon the assumption that both counts of the amended information involved but one identical act and that this assumption is based upon the single sentence of a letter written by the attorney general and submitted to this court after the briefs were filed, which the majority opinion interprets to be a concession on the part of the People that both counts of the information involve only one identical act. But when this letter, consisting as it does of two pages, is read as a whole, in the light of the purpose for which it was written, it becomes apparent that the majority opinion has misinterpreted the purport of this single sentence. In any event, the record itself must

control in the determination of the appeal, and as will here-
inafter be demonstrated, the factual assumption upon which
the majority opinion is founded is not only clearly negatived
by the allegations of the second count of the amended infor-
mation, but it is directly contrary to the position taken by the
prosecution throughout the trial of the case and in opposing
appellant's motions for new trial and arrest of judgment; also
contrary to the conclusion reached by the trial court in deny-
ing these motions. Moreover, it is directly contrary to the
position taken by the appellant himself while testifying at
the trial as a witness in his own behalf. Thirdly, section 1041
of the Penal Code declares that a plea of once in jeopardy
raises an issue of fact. It becomes an issue of law only when
the facts are undisputed. (*People* v. *Wilkison,* 30 Cal.App.
473 [158 P. 1067]; *People* v. *Conson,* 72 Cal.App. 509 [237
P. 799].) Here at the trial appellant himself treated the
issue as a disputed issue of fact, and it was submitted to the
determination of the jury as such pursuant to instructions
proposed by appellant; the jury found against appellant on
that contested issue, and as will hereinafter be shown, the
testimony of the defendant himself supports the jury's con-
clusion. However, the majority opinion fails to give any con-
sideration to this aspect of the case.

Turning to the record itself, the facts and circumstances
leading up to the arrest of appellant as they are shown by
the evidence of the prosecution, which in view of the verdict
must be taken as true, are as follows: At the time of trial the
appellant, Gene Krupa, was 34 years old, a musician, and
the proprietor and leader of a band which played in night
clubs and theatres. Appellant played the drums. Marijuana
is a narcotic plant, the growing, possession, transporting,
selling or giving away of which constitute separate crimi-
nal offenses. (See arts. I and IV, div. 10, chap. 7, Health
& Saf. Code.) The plant is dried and smoked in the form
of cigarettes, and when inhaled deeply, causes unpredict-
able results, one of its effects being to distort time. If
used by a musician it will cause him to "play faster without
feeling the effects of doing it." At the time of appellant's
arrest, his band was filling an engagement at a theatre in
San Francisco, and he was staying at one of the leading ho-
tels. The adjoining room to his was occupied by his man-
ager, there being a connecting door between the two rooms.

Prior to the opening of his engagement in San Francisco he filled one in Los Angeles, and while doing so hired a boy named John Pateakos as valet and property man, whose chief duty was to take care of appellant's clothing, particularly the suits he wore; and he brought the boy to San Francisco with him. On the night of January 18, 1943, three agents from the federal bureau of narcotics, named Guibbini, Grady and Polcuch, having been informed that appellant was in the possession of marijuana cigarettes, called at appellant's dressing room in the theatre in which he was playing, to interview him regarding the information they had received. Pateakos was present at the beginning of the interview, but the agents requested him to leave the room, which he did. After identifying themselves as federal narcotic agents, they asked appellant if he had any marijuana on his person or in his room, and he denied having any. They told him they had been informed that he did have a quantity of marijuana in his possession, and he replied that there was nothing to the information. They then asked him if they might search his dressing room, and he told them to "go ahead." While they were doing so Guibbini asked appellant if he had ever used marijuana, and appellant stated that he had at one time, about 10 years ago, but that lately he had had nothing to do with it. While the search was going on, appellant asked permission to leave the room to go out and wash. He was allowed to do so, but as soon as he left Guibbini followed him and he observed appellant about half way up the stairs leading to the second floor engaged in earnest conversation with Pateakos. Guibbini separated them, and brought appellant back to his dressing room, where he was further questioned. Guibbini thereupon went to a phone and instructed the room clerk at the hotel where appellant was staying to allow no one except appellant to enter the latter's room. Guibbini then proceeded to the hotel, leaving Polcuch with appellant. As Guibbini got out of the elevator at the hall leading to appellant's room he saw Pateakos waiting to enter the elevator. He brought Pateakos back to the room adjoining appellant's, occupied by the manager of the band, who was there present, and upon searching Pateakos found in his pocket two envelopes, one containing 37 marijuana cigarettes and the other containing two whole ones, and one-half of one partially smoked. Shortly thereafter, Polcuch and Grady arrived with appellant, and Polcuch and Guibbini took him

to his room, where the officers found some fragments of marijuana in a drawer of a writing desk. Appellant denied having anything to do with the marijuana cigarettes or the fragments found. He was then taken back to the adjoining room, and Pateakos was taken to appellant's room. Pateakos refused then to make a statement in explanation of his possession of the marijuana cigarettes. He admitted having them in his pocket, but he denied knowing anything about marijuana. He was then returned to the room where appellant was, and appellant stated if the boy had the marijuana cigarettes on him, it was his worry and not his (appellant's); that he did not have anything to do with it. The agents then took Pateakos to their office, where he made a statement, and appellant was placed under arrest the following day.

Pateakos appeared as a witness against appellant at the preliminary examination, but shortly afterwards disappeared, and was unavailable at the trial. The substance of the testimony given by him at the preliminary examination was as follows: He was 20 years of age, and his home was in New Bedford, Massachusetts. He had been employed at the Paladium at Hollywood, where appellant employed him as his valet and property man. Part of his duties were to "carry" all of appellant's "clothes along," and "assist him at his room." After leaving appellant's dressing room at the theatre at the time of the visit of the federal agents, appellant came out and overtook him about half way up the stairs; and appellant told him to go to his room and get an envelope in his coat pocket. In obedience to this request he ran to the hotel and went to the clerk's office to get the key to appellant's room, but was told they were not supposed to give out the key. He then went to a "bell hop" he knew, who let him into appellant's room, where he got the envelope from a pocket of appellant's coat. It was in the closet. The envelope was open, and contained marijuana cigarettes. After leaving the room he recalled that one day while in the room the drawer to the writing desk was open and he had noticed two and a half marijuana cigarettes in the drawer, so he told the bell boy he had forgotten something and returned to the room, where he took these two and a half cigarettes and placed them in an envelope and took them with him. At the elevator he met Guibbini, who took him to the band manager's room, searched him, and found the two envelopes containing the marijuana cigarettes in the clothing he wore.

The bellboy corroborated Pateakos' testimony. He testified that he let Pateakos into the room at the time indicated and saw him remove the envelope from the clothes in the closet and put it in his pocket; that he let him into the room the second time when Pateakos stated in the hall he had forgotten something; that he saw Pateakos take another envelope from the writing desk; that when he let Pateakos in the room he was unaware of the instructions to the clerk to permit no one but appellant to enter his room.

Section 11712 of the Health and Safety Code deals with the possession of narcotics. It provides that any person convicted of having possession of any narcotic is punishable by imprisonment in the county jail or the state prison. Section 11713 of the same code deals with the act of transportation of narcotics. It provides that any person convicted of transporting, selling, or giving away any narcotics is punishable by imprisonment in the county jail or the state prison. The element of transportation is not included in the former section, nor is the element of possession included in the latter. They constitute separate offenses under the different sections. Section 11714 of said code declares that every person who hires, employs or uses a minor in unlawfully transporting or carrying any narcotic is punishable by imprisonment in the state prison. This section makes no mention of possession.

The juvenile law has been made a part of the Welfare and Institutions Code, and section 702 thereof provides among other things that any person who commits an act which causes or tends to cause or encourage a minor to come within the provisions of the juvenile law as specified in section 700 thereof is guilty of a misdemeanor, and among the acts specified in section 700 is the violation of any law of this state.

Under the authority of the provisions of the two statutes above mentioned and in view of the facts developed at the preliminary examination, the district attorney on February 2, 1943, filed an information against the appellant charging him in separate counts with having violated both the Health and Safety Code and the juvenile law. The first count charged appellant with having violated section 11714 of the Health and Safety Code, to wit, with having employed and used Pateakos "in unlawfully transporting and carrying a quantity of cigarettes containing a narcotic." By the sec-

ond count he was charged with having committed two acts in violation of the juvenile law: (1) by inducing Pateakos "to keep" a quantity of narcotics in *his, Pateakos'*, room; and (2) by permitting and allowing Pateakos to "handle and have in the possession of said John Pateakos" cigarettes containing marijuana, all of which it was alleged did cause and contribute to the said Pateakos "becoming and remaining such a person as is described" in section 700 of the juvenile law, to wit, a person "who violates any law of this state." Appellant moved to dismiss the information and filed a demurrer thereto, but on April 19, 1943, before any ruling was made on his motion or demurrer, he entered a plea of guilty to the second count and asked for probation. The cause was then continued from time to time until May 17, 1943, on which date the district attorney filed an amended information. Count 1 as originally filed was not changed, but count 2 was. The charge made in the original count 2 that appellant induced Pateakos "to keep" narcotics in his room was omitted, and it was charged in the amended count 2 (1) that appellant induced and persuaded Pateakos to "obtain and remove and transport" from the pocket of appellant's coat an envelope containing a quantity of narcotics; and (2) that he permitted and allowed Pateakos "to handle and have in the possession" of Pateakos cigarettes containing marijuana, all of which did encourage and cause and contribute to Pateakos becoming a person such as is described in section 700 of the juvenile law, to wit, a minor who violates any law of this state. In other words, in count 2 as amended appellant was charged with having induced Pateakos to violate two separate sections of the Health and Safety Code, to wit, (1) possession of narcotics (§ 11712); and (2) transporting narcotics (§ 11713). On the day following the filing ·of the information appellant was again arraigned and the minutes of the court as originally entered recited the following: "Thereupon, the defendant, Gene Krupa, pleads that he is not guilty as charged in count one of the amended information, and not guilty by reason of a former holding; and guilty to count two of the amended information"; whereupon appellant interposed a motion for probation. (It should be here stated, however, that after the clerk's transcript was filed herein the trial court made a *nunc pro tunc* order correcting the minutes so that as corrected the plea of once in jeopardy was legally sufficient to meet the requirements of

Pen. Code, § 1017, subd. 4.)   On the same day that appellant asked for probation his motion was denied, and he was sentenced to imprisonment in the county jail for ninety days and fined $500; thereafter and on June 29, 1943, he was brought to trial before a jury on the second count.

On account of the disappearance of Pateakos the testimony given by him at the preliminary examination was read to the jury.   Appellant became a witness  in his own behalf, and in contradiction of the denials he had made to the federal agents on the night of January 18th he admitted that all of the marijuana cigarettes which had been taken from his clothes belonged to him.   In this connection he testified that he brought them to San Francisco from Los Angeles in the clothing which Pateakos was required to take care of, and that he had smoked part of one of the cigarettes after coming to San Francisco.   He further admitted that while in San Francisco the cigarettes were kept in the clothes Pateakos was required to take care of, and that Pateakos "handled the clothes every day in the week."   He denied, however, that he had asked Pateakos on the night in question to remove them from the pockets of his clothes.   He was asked why he pleaded guilty to count 2 wherein he had been charged with having done so, and in reply he went on to say that he was advised by his attorney that it was against the "rule" in California to have a minor around where there were marijuana cigarettes, and that Pateakos had taken care of his, appellant's, room, his laundry, and his clothes.   In other words, the purport of his testimony was that he had pleaded guilty to that portion of the charge that he had allowed Pateakos to "handle" and have possession of the cigarettes, but that he was not guilty of the other act charged therein, to wit, that he had induced the boy to transport and carry the cigarettes.   In that state of the record the issue of double jeopardy was submitted to the determination of the jury pursuant to two instructions, one of which was proposed by appellant, and was as follows:  "It appears from the evidence in this case that Gene Krupa pleaded guilty on the 19th day of May, 1943, in this Superior Court to the charge of contributing to the delinquency of John Pateakos, a minor, committed by allowing said John Pateakos to have and handle the marijuana cigarettes involved in the prosecution now before you and by persuading said John Pateakos to obtain and

remove and transport said cigarettes from the pocket of a coat, and therefore, if you find the present information charges the same offense the defendant is twice in jeopardy and entitled to an acquittal.'' Upon the evidence before it the jury returned a verdict finding appellant guilty, which necessarily carried with it the implied finding that the act of allowing Pateakos to handle and have possession of the marijuana cigarettes was not the same act involved in the charge of inducing Pateakos to transport and carry the cigarettes, on which charge appellant was then on trial; and as stated, the testimony of appellant himself is legally sufficient to support the conclusion reached by the jury.

Even assuming, however, that this court, in the exercise of its reviewing powers, has the right to disregard the conclusion reached by the jury and the evidence supporting it, and may, contrary thereto and as a matter of law, hold that the handling, transportation, possession and carrying constituted one transaction, the judgment in my opinion should nevertheless be affirmed, for regardless of whatever may be the rule in other jurisdictions, it is the well settled law of this state ''that a plea of once in jeopardy . . . is not good unless the second prosecution is for the same offense, both in law and in fact, as that for which the first prosecution was instituted.'' (7 Cal.Jur. 955.) In other words, the established rule is that a defendant may be convicted on two or more separate offenses arising out of the same transaction where each is stated in a separate count and when the offenses differ in their elements and one is not included in the other. The real test is the identity of the offenses, as distinguished from the identity of the transaction from which they arise. (*People* v. *Hoyt,* 20 Cal.2d 306 [125 P.2d 29]; *People* v. *Venable,* 25 Cal.App.2d 73 [76 P.2d 523]; *People* v. *Bevans,* 19 Cal.App.2d 288 [65 P.2d 92]; *People* v. *Coltrin,* 5 Cal.2d 649 [55 P.2d 1161]; *People* v. *Warren,* 16 Cal.2d 103 [104 P.2d 1024]; *People* v. *Zimmer,* 23 Cal.App.2d 581 [73 P.2d 923].) The same doctrine is stated in 15 American Jurisprudence at page 63 as follows: ''A single act may constitute two or more distinct and separate offenses, and a person charged therewith may be convicted and punished for both. Prosecutions of a person for separate offenses based upon the same transaction do not involve double jeopardy where there are distinct elements in one offense which are not included in the other. If a single transaction constitutes two or more offenses wherein

the lesser offense is not necessarily involved in the greater and the facts necessary to convict on the second prosecution would not necessarily have convicted on the first, then the first prosecution is not a bar to the second.'' Later on, in the same volume at page 65, it is said: ''A putting in jeopardy for one act is no bar to a prosecution for a separate and distinct act merely because they are so closely connected in point of time that it is impossible to separate the evidence relating to them on the trial for the one of them first had. Consequently, a plea of former jeopardy will not be sustained where it appears that in one transaction two distinct crimes were committed.'' And again on page 67 it is stated: ''A single act may be an offense against two statutes; and if one statute necessitates proof of a different circumstance or element from that which the other requires, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other. . . . Undoubtedly, it is within the power of the legislature to create two or more offenses which may be committed by a single act, each of which is punishable by itself. A conviction or acquittal in such case under either statute would be no bar to a conviction under the other, for the accused would not be twice in jeopardy for one offense, but only once in jeopardy for each offense.''

In applying the foregoing rules in this state it has been held that an acquittal on a charge of rape does not exclude a conviction for incest, since they were not identical offenses (*People* v. *McCollum,* 116 Cal.App. 55 [2 P.2d 432].) It has also been held that the conviction of misdemeanors consisting in the unlawful possession and manufacture of intoxicating liquor, does not constitute former jeopardy in a prosecution for possession of a still, notwithstanding the fact that all of the offenses were committed at the same time and place. (*People* v. *Painetti,* 210 Cal. 476 [292 P. 965].) In *People* v. *Bevans, supra,* the appellant was charged in separate counts with a violation of section 288 of the Penal Code and with violation of the juvenile court law, and he was convicted on both counts. He contended that the offenses were identical, but the court held otherwise, saying in part: ''. . . the offenses charged, while identical in time, were not the same either in law or in fact. The conviction of the one would not be a bar to the conviction of the other.'' In *People* v. *Moon,* 7 Cal.App.2d 96 [45 P.2d 384], it was held that in a

prosecution for robbery and grand theft where the two offenses consisting of different elements but arising from the same acts were charged in two separate counts of the information, the dismissal of the count charging robbery did not bar a conviction upon the second count for grand theft. And in *People* v. *Sheasbey*, 82 Cal.App. 459 [255 P. 836], it was held that robbery and kidnapping do not possess the same elements and both may be punished although relating to the same transaction.

In the present case the elements of the two offenses denounced by the separate statutes which form the basis of the two counts were essentially different. In order to establish guilt under the second count, which was based on the juvenile court law, to which appellant pleaded guilty, all that was necessary to prove was that the minor violated section 11712 of the Health and Safety Code by having possession of narcotics, and that appellant contributed to such act of violation by the minor; whereas in order to establish guilt under the first count, which was based on the Health and Safety Code, and upon which appellant was convicted by a jury, it was essential for the prosecution to prove more than mere possession of narcotics by the minor; it was required to establish the additional element that appellant induced the minor to transport and carry the narcotics.

It is my conclusion, therefore, that under the doctrine of the authorities above cited the conviction under the second count did not bar a conviction under the first, and that accordingly the judgment should be affirmed.

Respondent's petition for a hearing by the Supreme Court was denied June 26, 1944. Shenk, J., voted for a hearing.