[No. C049554. Third Dist. Feb. 23, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH DUARTE, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I, III, IV, V.

**COUNSEL**

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, J. Robert Jibson, Jesse

Witt and Mark A. Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**NICHOLSON, J.**—Defendant agreed to participate as a load car driver in a large-scale cocaine trafficking conspiracy. Convicted of conspiracy to transport cocaine between noncontiguous counties, conspiracy to use a minor to transport cocaine, and possessing a false compartment and sentenced to 26 years in state prison, defendant appeals. He contends the evidence was insufficient to sustain a true finding on the allegation the cocaine weighed more than 40 kilograms (which true finding accounted for 20 years of his state prison term) and to sustain his conviction for possessing a false compartment. We find merit in these contentions. We also find merit in defendant's contention the trial court improperly imposed a laboratory analysis fee but find no merit in the rest of defendant's contentions. We therefore reverse as to the weight enhancement and the false compartment conviction and remand for resentencing.

### PROCEDURE

Defendant was indicted along with 14 codefendants. Only three of the numerous counts applied to defendant: count one, conspiracy to transport cocaine between two noncontiguous counties (Pen. Code, § 182, subd. (a)(1) (conspiracy); Health & Saf. Code, § 11352, subd. (b)); count two, conspiracy to use a minor to transport cocaine (Pen. Code, § 182, subd. (a)(1); Health & Saf. Code, § 11353, subd. (b)); and count twelve, possession of a false compartment with intent to conceal cocaine (Health & Saf. Code, § 11366.8, subd. (a)). In connection with count one, the indictment alleged that the weight of the cocaine exceeded 40 kilograms (Health & Saf. Code, § 11370.4, subd. (a)(5)); defendant was substantially involved in the planning, direction, execution or financing of the underlying offense (Health & Saf. Code, § 11370.4, subd. (a)); a principal was armed during the commission of the offense (Pen. Code, § 12022, subd. (a)(1)); and defendant took advantage of a position of trust in committing the crime (Cal. Rules of Court, rule 4.421(a)(11)).

Defendant was tried along with three other defendants. He had a separate jury, however, because the prosecution introduced his statement against him.

The jury found defendant guilty as charged, except that it found not true the allegation that a principal was armed during commission of the offense.

The trial court sentenced defendant to six years for count one with a consecutive 20-year term for the weight enhancement. The court imposed the middle terms for counts two and twelve, but stayed those terms pursuant to Penal Code section 654. The total term imposed was 26 years in state prison.

## FACTS

Antonio Villasenor, with others, including Jesse Vasquez and Jason Tolliver, ran a large-scale operation obtaining, transporting, and selling methamphetamine and cocaine. Defendant became involved in the organization at a low level; he was a load car driver.

In March 2002, Vasquez asked defendant to drive a vehicle to Texas. Vasquez would pay $4,000. Defendant drove the vehicle to McAllen, Texas, and, on April 1, 2002, got a room at the Microtel. Vasquez met defendant there, took the vehicle for one night, then returned it to defendant the following day. Defendant drove the vehicle back to Sacramento and called Vasquez's phone number. Villasenor answered the phone. Villasenor went to defendant's residence and took the vehicle. Vasquez went to defendant's residence later that evening and paid defendant $4,000. Because of the amount of money he was paid, defendant suspected he was transporting marijuana.

On April 8, 2002, Larry Kindle installed a hidden compartment in a white Chrysler Concorde. A few weeks after defendant's first trip to Texas, Vasquez again asked defendant to drive to Texas. This time, he asked defendant if defendant had a small child he could take with him. Defendant replied that he had a son in Riverside. Vasquez encouraged defendant to take his son. Defendant contacted his ex-wife and arranged to take his son on a road trip. He drove the Concorde to Riverside to get his son, then drove to Texas. Again in McAllen, defendant got a room at the Microtel and waited for Vasquez.

Vasquez never came to the motel. After defendant had been at the motel for more than a week, he began having problems with his ex-wife, who wanted him to bring the child back. She eventually went to McAllen to take the child

home. By telephone, Vasquez offered defendant's ex-wife $500 if she would travel back to California with defendant. Defendant told her Vasquez had offered him $5,000 to drive the Concorde back to Sacramento. The ex-wife took the child and went home by bus. About three days later, defendant got tired of waiting and began driving back to Sacramento. He called Vasquez, who promised him a bonus if he returned to McAllen. Back in McAllen, defendant dropped the Concorde off at a Kentucky Fried Chicken restaurant, according to Vasquez's instructions.

Three days after defendant dropped off the Concorde, Vasquez told defendant to meet two men. The two men, driving the Concorde, met defendant and went to a Western Union office to get $2,000 Vasquez had wired to defendant. They spent the day driving around and shopping.

The next day the two men picked up defendant at the motel and offered him $14,000 to retrieve a car that they claimed belonged to them. They went to a house that they also claimed belonged to them. Defendant went to the front door, which was locked, and tried to kick it in. He was unsuccessful. The men took defendant to a store and they bought tools to break in. Back at the house, defendant was about to jump over the fence into the backyard when he saw a man on the porch. He dropped the tools and fled back to the car. The men took him back to the motel.

Defendant contacted Vasquez and told him he thought he was getting "caught up." Defendant called his girlfriend in Sacramento, and she wired him money for a bus ticket. He took a bus to Phoenix, where defendant again contacted Vasquez, who paid for defendant to fly back to Sacramento. Vasquez picked him up at the airport and, on the way home, told defendant he was still going to pay defendant $4,000 for his trouble. Vasquez never paid. He gave defendant's girlfriend a vehicle, though without keys or title.

DISCUSSION

I

*Weight Enhancement**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 1231.

II

*Use of Minor to Transport*

At the suggestion of coconspirators, defendant went to Riverside and took his minor son with him to Texas to divert suspicion during defendant's return trip to California with the cocaine. "Every person 18 years of age or over, . . . (b) who hires, employs, or uses a minor to unlawfully transport, carry, sell, give away, prepare for sale, or peddle any such controlled substance, . . . shall be punished by imprisonment in the state prison for a period of three, six, or nine years." (Health & Saf. Code, § 11353.) Convicted of conspiracy to violate this section, defendant asserts the evidence was insufficient. We disagree.

Defendant contends that, in context, the word "uses" in this statute, means that the minor "*himself*" undertakes the transportation or other proscribed act *instead* of the adult." "If the Legislature had intended mere accompaniment to fall within the ambit of the statute," continues defendant, "it certainly would have so provided." Defendant gives no further support for this interpretation. His reasoning is not self-evident. While it is true the Legislature could have been more specific, that is only one consideration in our task, which is to determine the Legislature's intent when it passed this law.

■ "Familiar canons of statutory construction require that, in construing a statute, a court ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining that intent, we consider the statute read as a whole, harmonizing the various elements by considering each clause and section in the context of the overall statutory framework. [Citations.] We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences. [Citation.]" (*People v. Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224].)

Section 11353 was added to the Health and Safety Code in 1972. Although amended several times since, the statute already had the "uses" language in 1973. (Stats. 1973, ch. 1078, § 5, p. 2174.) This section was a reenactment of similar statutes such as Health and Safety Code former section 11714, enacted in 1939 and repealed in 1959, which always included the "uses"

language. (Stats. 1939, ch. 60, p. 772; Stats. 1959, ch. 1112, § 1, p. 3193.) Yet there is no reported case concerning the issue presented here—whether "uses" in Health and Safety Code section 11353 included using a minor, not to actually transport contraband, but to divert suspicion and avoid detection by law enforcement.

■ "The conduct denounced as a crime by [former] section 11714 of the Health and Safety Code is the use of a minor in the unlawful transportation of a narcotic. The essence of the offense is its tendency to debauch or corrupt minors. [Citation.] The use of a minor to transport narcotics necessarily contributes to the delinquency of that minor. [Citations.]" (*People v. De Paula* (1954) 43 Cal.2d 643, 647 [276 P.2d 600].) The apparent intent of Health and Safety Code section 11353 is to protect minors from the dangers and corruption of the narcotics trade. While it could be argued that the minor would have been oblivious to the criminal circumstances of his road trip with his father, there can be no argument that it would have endangered the minor. The drug trade is fraught with danger. (See *Anaya v. Turk* (1984) 151 Cal.App.3d 1092, 1103 [199 Cal.Rptr. 187] [drug trafficking a dangerous activity].) The Legislature's intent to protect minors requires a broad interpretation of the statute to accomplish the Legislature's design. (See *In re John S.* (2001) 88 Cal.App.4th 1140, 1145 [106 Cal.Rptr.2d 476] [broad interpretation of different statute to achieve legislative purpose to protect minors from sex offenders].)

■ Here, there can be no doubt that taking defendant's minor son with him as defendant transported cocaine would have endangered his son. Furthermore, under the language of the statute, defendant conspired to "use" his son to transport cocaine because his son's presence, in the estimation of defendant and his coconspirators, would have enabled defendant to avoid detection. Therefore, defendant conspired to violate Health and Safety Code section 11353.

■ Defendant cites two cases in which the minor actually transported the contraband, *People v. Krupa* (1944) 64 Cal.App.2d 592 [149 P.2d 416] and *People v. De Paula, supra,* 43 Cal.2d 643, and contends that "under" those cases "a defendant may be found guilty only where the minor himself or herself personally transports the contraband." This argument is illogical.

Establishing that a defendant is guilty if the minor actually transported the contraband does not establish that the defendant is not guilty if the minor did not actually transport the contraband. Furthermore, the cited cases did not discuss whether the minor had to be the actual transporter. A case is not authority for a proposition not considered. (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 343 [14 Cal.Rptr.3d 857, 92 P.3d 350].)

Defendant's contention that the evidence was insufficient to sustain his conviction for conspiracy to violate Health and Safety Code section 11353 is without merit.

III–V*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The true finding on the weight enhancement associated with count one and the conviction on count twelve are reversed. In all other respects, the judgment of conviction is affirmed. The sentence is vacated and the case remanded for resentencing consistent with this opinion.

Sims, J., concurred.

**BLEASE, Acting P. J.,** Concurring.—I concur in the judgment and opinion except as to part II of the Discussion, as to which I dissent. I would reverse the judgment as to count two, the use of a minor to transport cocaine.

The majority opinion has mislaid its grammar book. It pays no attention to the language of Health and Safety Code section 11353. "[T]o unlawfully transport" a controlled substance means to "carry" as the succeeding term says. (§ 11353.) It does not say "in" the transportation of or in the carrying of a controlled substance. Moreover, the operative terms to "hire[], employ[], or use[]" a minor to transport drugs patently mean to employ or use them to transport drugs. (§ 11353.) It does no good to resort to the intention of the Legislature to levitate the meaning when the intention is to be derived from the language

---

*See footnote, *ante*, page 1231.

of the statute. As the majority opinion notes, "there is no reported case concerning the issue presented here . . . ." (Maj. opn., *ante*, at p. 1237.) The reason is obvious.

Appellant's petition for review by the Supreme Court was denied May 23, 2007, S151178.